UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                           Chapter 11 Cases

ADINATH CORP. and SIMPLY                         Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                         (Jointly Administered)

      Debtors.

_____/

**DEBTOR'S EXPEDITED MOTION FOR AN ORDER
(I) APPROVING THE BIDDING AND AUCTION PROCEDURES
FOR THE SALE OF INTELLECTUAL PROPERTY , (II) SETTING LEASE SALE
HEARING DATES, (III) AUTHORIZING AND APPROVING (A) THE SALE OF
INTELLECTUAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS, AND (B) ASSUMPTION AND
ASSIGNMENT OF LEASES, AND (IV) GRANTING CERTAIN RELATED RELIEF**

**Expedited Hearing Requested on or before July 21, 2015**

**Basis for Requested Expedited Hearing**

The Debtor respectfully requests the Court to conduct an expedited
hearing on this Motion. Once the Debtor's inventory is liquidated,
the Debtor will have no need for the Intellectual Property. Further,
delay in implementing the sale of the Intellectual Property could
result in a diminishment in value of the Intellectual Property.
Additionally, the sale of the Intellectual Property represents the
remaining significant asset to be sold and the Debtor would like to
conclude the sale of all of its assets within the next few weeks and
economize on the incurrence of administrative expenses.

Simply Fashion Stores, Ltd. ("Debtor"),[2] by and through its undersigned counsel, files

this expedited motion (the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of the

United States Code (the "Bankruptcy Code"), and Rules 2002, 6003, 6004 and 6006 of the

---

[1] The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

[2] The Debtors believe that the sole owner of the intellectual property (the "Intellectual Property" or "IP") subject of this Motion is Simply Fashion Stores, Ltd. To the extent that it is later determined otherwise, the relief requested in this Motion shall also apply to Debtor Adinath Corp.

6454406-7

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.  In support of this Motion, the Debtor relies upon the *Declaration in Support of First Day Pleadings* [ECF no. 22] (the "First Day Declaration"), which was filed with the Court on the Petition Date and is incorporated herein, as well as the *Debtors' Application to Employ and to Retain Hilco IP Services, LLC d/b/a Hilco Streambank, as Intellectual Property Consultant for Simply Fashion Stores, Ltd., Nunc Pro Tunc to May 26, 2015* [ECF No. 310] (the "Hilco Retention Application")[3], and respectfully represents as follows:

### Disclosures Under Bankruptcy Rules, Local Rules and Guidelines

Pursuant to Local Rule 6004-1(B) the Debtor submits the following list and summary of the material terms of the sale.

| Material Provisions | Summary Description |
|---|---|
| **Purchaser** | The ultimate purchaser(s) for some or all of the IP[4] is unknown at this time as Hilco (the Debtor's IP consultant) will seek to procure buyers for the IP. |
| **Agent** | Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco"), which is not an insider of the Debtor. |
| **Bid Deadline** | August 6, 2015 11:59 p.m. (ET). |
| **Auction** | August 10, 2015 at 10:00 a.m. (ET) (either live/telephonic auction or by submitting best and final offer in writing). |
| **Requested Intellectual Property Sale Hearing** | Subject to the Court's availability, August 11, 2015. |

---

[3]    On July 5, 2015, the Court entered an order approving the Hilco Retention Application [ECF No. 387].  Hilco Streambank has been retained by the Debtor to facilitate the sale of the IP.

[4]    The IP is comprised of Simply Fashion's trade name, domain name and customer list (however, such customer lists contain email addresses only (i.e., no personal identification data)).

| Sale Objection Deadline | August 10, 2015, 4:00 p.m. (ET). |
|---|---|
| **Good Faith Deposit** | Ten percent (10%) of bid amount for the IP that is subject of the bid. |
| **Fees** | <u>Fee</u>.[5]  For any sale(s) of the IP or some portion thereof, Hilco will earn a commission equal to ten percent (10%) of aggregate net proceeds realized by the Debtor's estate up to $500,000, and fifteen percent (15%) of aggregate net proceeds realized by the Debtor's estate in excess of $500,000. |
| **Reimbursable Expenses** | <u>Reimbursable Expenses</u>.[6]   All Reimbursable Expenses (defined below) would be borne by the Debtor, and Hilco would be entitled to reimbursement from the Debtor for all reasonable and customary Reimbursable Expenses in accordance with a budget of $10,000 (the "<u>Expense Budget</u>").  Any amounts exceeding the Expense Budget shall be the subject of the Debtor's approval.   The Debtor will reimburse Hilco within five (5) business days after receipt of an invoice for Reimbursable Expenses (with the same proviso that such Reimbursable Expenses do not in the aggregate exceed the Expense Budget, or are otherwise pre-approved by the Debtor.<br><br>"Reimbursable Expenses" (as defined in the Hilco Retention Application) mean all reasonable and verified out-of-pocket costs and expenses incurred by Hilco in connection with its performance of its services as set forth in Item 2 of the Consulting Agreement (collectively, the "<u>Services</u>"), to the extent not in excess of amounts allocated thereto in the Expense Budget, including, without limitation:  reasonable expenses of marketing, advertising, travel and transportation; postage and courier/overnight express fees, provided that such Reimbursable Expenses do not in the aggregate exceed the Expense Budget, or are otherwise pre-approved by the Debtor and other mutually agreed upon expenses incurred in connection with performing the Services required by the Consulting Agreement. |
| **Transfer of Personally Identifiable Information** | The Debtor does not anticipate the sale or transfer of any personally identifiable information in connection with the sale of the IP; while a customer list is included it contains email addresses and phone numbers only. |
| **Potential Lienholders** | JNS INVT, LLC (the Debtor's pre-petition secured lender) |

---

[5]   The proposed fees and expenses described in this section have already been approved by the Court, as such fees were requested in the Hilco Retention Application.  As stated herein, on July 5, 2015, the Court entered an order granting the Hilco Retention Application [ECF No. 387].

[6]   *See id.*

## Preliminary Statement

The Debtor, with the assistance of its advisors, has determined that the Debtor's IP may have value that can be monetized through a sale process. The Debtor is filing this Motion in order to implement an efficient and expedient process for obtaining value for the IP for the Debtor's estate and its creditors.  The Debtor believes that the proposed sale procedures (the "Sale Procedures") are necessary and appropriate.  In formulating the Sale Procedures, the Debtor has attempted to balance its obligation to provide adequate and appropriate notice to parties in interest and potential purchasers against the need to sell its IP expeditiously, in order to obtain the maximum value for the IP.

The Debtor believes that the completion of the sale process in a timely manner will maximize the value of the IP.  Accordingly, the Debtor submits that the pursuit of transactions with respect to the IP in the manner proposed herein is in the best interests of the Debtor's estate. Accordingly, the Debtor seeks approval for one or more sales (collectively, the "Sales") of the Debtor's IP identified on **Exhibit "A"** by means of the proposed Sale Procedures.[7]

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004 and 6006 and Local Rule 6004-1.

---

[7]      The IP listed in Schedules 1.1(a) (Trademarks) and 1.1(b) (Domain Names) to **Exhibit "A"** attached hereto represents, to the best of the Debtor's knowledge, all of the Debtor's IP, but to the extent that the Debtor becomes aware of additional IP it reserves the right to file supplemental, revised schedules in advance of the Bid Deadline and include that additional IP in the sale process.

6454406-7

**Background**

4.      On April 16, 2015, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11, title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

5.      On April 22, 2015, the United States Trustee appointed a committee of creditors holding unsecured claims in the Debtor's chapter 11 case (the "Committee") [ECF No. 79].

6.      The Debtor is operating its business and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the Petition Date, Simply Fashion was primarily a brick and mortar retailer of Junior, Plus and Super Plus women's fashion catering to African-American women between the ages of 25 and 55, and it operated 193 stores in 25 states.  As of the Petition date, Simply Fashion employed 1,332 employees.  For a detailed description of the Debtor, its operations, the Debtor respectfully refers the Court and parties in interest to the First Day Declaration.

8.      On April 17, 2015, the Debtor filed its *Emergency Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 6004 and 6006, and Local Rule 6004-1 for (I) Approval of Procedures in Connection With the Sale of All or Substantially All of the Debtor's Assets; (II) Authorization to Enter Into Stalking Horse Agreement in Connection Therewith; (III) Approval of the Payment of Stalking Horse Protections; and (IV) the Setting of Related Auction and Hearing Dates* [ECF No. 39] (the "Sale Motion") seeking an accelerated sale of all of the Debtor's assets pursuant to arrangements with a stalking horse bidder or to a bidder or group of bidders submitting higher or otherwise better bids pursuant to the proposed bidding procedures in order to maximize the value of the Debtor's estate for the benefit of all parties in interest.  An order approving the Sale Motion was entered on May 6, 2015 [ECF No. 195].  The Debtor's going-out-of-business sales concluded on June 30, 2015.

6454406-7

9.      On June 2, 2015, the Debtor filed its *Debtor's Motion to Authorize Sale of Personal Property by Public Auction and Related Relief* [ECF No. 294] (the "FF&E/Vehicle Sale Motion"), seeking authority to sell certain furniture, fixtures and equipment at certain (non-retail store) leased premises in Birmingham, Alabama, as well as automobiles.  On June 14, 2015, the Court entered an order granting the FF&E/Vehicle Sale Motion [ECF No. 341].  The auction is scheduled for July 13, 2015.

10.      On June 5, 2015, the Debtors filed the Hilco Retention Application in order to facilitate the orderly sale of the IP.  On July 5, 2015, the Court entered an order granting the Hilco Retention Application [ECF No. 387].  Hilco has been working with the Debtor to collect and secure all of the available information and other data concerning the IP, prepare marketing materials designed to advertise the availability of the IP for sale, and develop and execute a sales and marketing program designed to elicit bids for the IP from qualified bidders.  Hilco, with the assistance of the Debtor, will be responsible for responding to requests for due diligence from potential bidders that execute appropriate confidentiality agreements and any other documents reasonably requested.  Hilco's resources, capabilities and experience will assist the Debtor in its efforts to maximize and derive value from the IP.

### Relief Requested

11.      The Debtor is seeking to sell the IP at an Auction in whole to a single bidder or in part to multiple bidders, with each Winning Bidder for the relevant portion of the IP executing a purchase agreement (the "Purchase Agreement"), substantially in the form of which is attached as Exhibit 2 to the Bidding Procedures (defined below).  In addition, in connection with the sale of the IP, it may be necessary to assume and assign certain related executory contracts (the "IP Agreements") to the Winning Bidder(s).  In the event that assumption and assignment of any IP Agreements become necessary, the Debtor will promptly file and serve upon the counterparties

6

to the relevant IP Agreements (as well as the parties receiving notice of this Motion) a supplemental brief in support thereof.

12.     By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit "B"** (the "Bidding Procedures Order"), approving the bidding and auction procedures, substantially in the form attached hereto as **Exhibit "C"** (the "Bidding Procedures"), and approving the form of sale notice, substantially in the form attached hereto as **Exhibit "D"** ("Sale Notice"). Pursuant to the Bidding Procedures, the Debtor will solicit bids for the IP. Moreover, the Debtor requests that the Court schedule a hearing on or about August 11, 2015 to approve of Sales of the IP (the "IP Sale Hearing").

13.     The Debtor proposes the following dates and deadlines in connection with the Sales:

- Bid Deadline: August 6, 2015 at 11:59 p.m. (Eastern prevailing time)

- Auction: August 10, 2015 at 10:00 a.m. (Eastern prevailing time)

- Objection Deadline: August 10, 2015 at 4:00 p.m. (Eastern prevailing time)

- IP Sale Hearing: August 11, 2015, subject to the Court's availability (Eastern prevailing time)

## I. THE COURT SHOULD APPROVE THE PROPOSED BIDDING PROCEDURES, BIDDING PROCEDURES ORDER AND SALE NOTICE

14.     The Debtor believes that the Bidding Procedures set forth herein will allow the Debtor to maximize the value of the Debtor's IP. The following is a summary of the proposed Bidding Procedures and is qualified in its entirety by the proposed Bidding Procedures attached hereto as **Exhibit "C"**:

(a).    **Bid Deadline**: Bids must be received not later than **11:59 p.m. (ET) on August 6, 2015** (the "Bid Deadline"). The Debtor may extend the Bid Deadline once or successively, but is not obligated to do so.

6454406-7

(b).    **Due Diligence**: All bidders shall be afforded an opportunity to participate in the diligence process and shall acknowledge in their bids that they had sufficient opportunity to conduct diligence.

(c).    **Bid Requirements**: All bids shall be required to include the following documents: (i) a letter identifying the full name and identity of the proposed purchaser of the IP or any portion thereof subject to the bid, the amount of the bid, allocated by each portion of the IP, (ii) adequate assurance of future performance information, which may include one or more of the following in the Debtor's discretion: (a) federal tax returns for two years, a current financial statement and/or bank account statements and (b) any other information that the Debtor may, in consultation with the Official Committee of Unsecured Creditors, reasonably request (the "<u>Adequate Assurance Information</u>"), (iii) a good faith deposit equal to 10% of bid amount for the IP or any portion thereof on which the bidder submits a bid; and (iv) the bidder's agreement to execute a Purchase Agreement substantially in the form annexed to the Bidding Procedures as Exhibit 2.  All bids shall be deemed to be irrevocable until the earlier to occur of (i) the Closing (as defined herein) or (ii) thirty (30) days following the Auction (as defined herein).

(d).    **Qualified Bids**: To be a "<u>Qualified Bid</u>", a bid must (i) propose, for the IP or some portion thereof that is the subject of such bid, payment in immediately available funds, (ii) not be conditioned upon obtaining financing or the outcome of unperformed due diligence by the bidder, (iii) include a commitment to consummate the Sale, if requested, within two business days following the IP Sale Hearing, (iv) be received by the Bid Deadline, (v) agree to waive any right to assert a claim for reimbursement of any fees and/or expenses of such bidder as an administrative expense, or otherwise, including, without limitation, as a substantial contribution.  In addition, to be a Qualified Bid, each bidder must be prepared to demonstrate adequately to the Debtor its ability to consummate the purchase of the IP or some portion thereof.

(e).    **Auction**: If the Debtor receives more than one Qualified Bid for the IP or some portion thereof, the Debtor may either conduct a live auction, a telephonic auction or ask for "best and final" submittals in writing (the "<u>Auction</u>") for such IP at (or by) **10:00 a.m. (ET) on August 10, 2015**.

(f).    **Successful Bids**:  The Debtor in its discretion may, after consultation with the Official Committee of Unsecured Creditors, (i) select, in its business judgment and pursuant to the Bidding Procedures the highest and/or best offer and the Winning Bidder, (ii) select, in its business judgment and pursuant to the Bidding Procedures the next two highest and/or best offers and the Back-Up Bid, (iii) reject any bid that, in the Debtor's business judgment, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Bidding Procedures, or (c) contrary to the best interests of the Debtor and its estate, creditors, interest holders or parties in interest, and (iv) remove any lease(s) from the Auction and sell directly to a proposed purchaser.  After the Auction, the Debtor will announce for the IP or some portion thereof for which the Debtor received a Qualified Bid which bid is the highest or otherwise best bid, if any (the "<u>Successful Bid</u>" or "<u>Winning Bidder</u>") and which bid is the second highest and/or best bid, if any (the "<u>Back-Up Bid</u>").  Within one business day

of the Debtor's announcement of a Successful Bidder, such bidder shall supplement its Good Faith Deposit in an amount equal to the difference between (x) 10% of the Successful Bid and (y) the Good Faith Deposit previously provided by the bidder with respect to it applicable Bid.

(g).    **IP Sale Hearing**: The Debtor will sell the IP or some portion thereof to the applicable Successful Bidder(s) upon the approval of such Successful Bid(s) by the Bankruptcy Court at the IP Sale Hearing following the Auction.

(h).    **Bids on IP Packages**: The Debtor shall have discretion to accept bids for the IP or some portion thereof.

(i).    **Closing**: The Debtor requests that, absent agreement by the Debtor to the contrary, the closing (the "Closing") of the Sale of the IP or some portion thereof shall take place on the later of (i) such date that is within two (2) business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under FRBP 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and (ii) August 31, 2015 (the "Sale Termination Date").

15.    Accordingly, the Debtor also respectfully requests entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit "B"** and approval of the Sale Notice, substantially in the form attached hereto as **Exhibit "D"**.

## II. THE COURT SHOULD APPROVE THE RELIEF REQUESTED AS A SOUND EXERCISE OF THE DEBTOR'S AND CRO'S BUSINESS JUDGMENT

16.    There are ample reasons for the Court to authorize the sale of the Debtor's IP as proposed herein.  Ample authority exists for the approval of the proposed sale of the Debtor's IP. In accordance with Bankruptcy Rule 6004(f)(l), sales of property outside the ordinary course may be consummated by private sale or public auction. The Debtor through its Chief Restructuring Officer has determined the sale of the Debtor's IP in accordance with the procedures described herein ensures that they will maximize recoveries for its creditors and is, therefore, in the best interests of the Debtor, its estate and creditors.

17.    Section 363(b)(l) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate." 11 U.S.C. § 363(b)(1). To sell property under section 363(b), the Debtor must demonstrate to the Court a legitimate business justification for the proposed action. *See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Diplomat Const., Inc.*, 481 B.R. 215, 218 (Bankr. N.D. Ga. Sept. 18, 2012). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

18.    Here, the Debtor is in the final stages of liquidating its assets and closing its stores. The Debtor has concluded its going-out-of-business sales. The Debtor will no longer need its IP at the conclusion of the auction of the Debtor's remaining furniture, fixtures and equipment (and certain automobiles) scheduled to take place on July 13, 2015. As the Debtor's operations wind down, the use of the IP, including the domain name, is no longer continuing in the market place, brand recognition will wane and the market value of the Debtor's brand will decrease. Additionally, the Debtor had a strong relationship with its customers, which will become more attenuated and less valuable as time passes without continued communication. Accordingly, the Debtor has determined that the sale of the IP in accordance with the Bidding Procedures will maximize recovery for its creditors and is, therefore, in the best interests of the

Debtor and its estate and creditors. The Debtor has consulted with JNS INVT, LLC, the Debtor's prepetition secured lender, who concur with the Debtor's determination. Accordingly, the Debtor submits that it has established a legitimate business justification for the proposed IP Sale.

19.    Other courts have approved the sale of intellectual property, whether by itself or as part of a sale of substantially all of a debtor's assets, including where Hilco served as the intellectual property agent under similar circumstances. *See, e.g., In re Naartjie Custom Kids, Inc.*, No. 14-29666 (WTT) (Bankr. D. Utah Nov. 25, 2014) [Docket No. 290]; *In re Brevity Ventures, Inc.*, No. 14-11468 (MFW) (Bankr. D. Del. Sept. 25, 2014) [Docket No. 89]; *In re Good Enterprises, Ltd.*, No. 13-20684 (JFK) (Bankr. E.D Pa. Oct. 1, 2014) [Docket No. 236]; *In re Dots, LLC, et al.,* No. 14–11016 (DHS) (Bankr. D. N.J. May 22, 2014) [Docket No. 649]; *In re Borders Group, Inc., et al.,* No. 11-10614 (MG) (Bankr. S.D.N.Y. Sept. 27, 2011) [Docket No. 1876]; *In re Anchor Blue Holding Corp. et al.*, No. 11-10110 (PJW) (Bankr. D. Del. Mar. 7, 2011) [Docket No. 267]; *In re Whitehall Jewelers Holdings, Inc., et al.,* No. 08-11261 (KG) (Bankr. D. Del. Sept. 23, 2009) [Docket No. 1810]; *In re KB Toys, Inc. et al.*, No. 08-13269 (KJC) (Bankr. D. Del. Sept. 2, 2009) [Docket No. 808]; *In re Mervyns' Holdings, LLC et al.*, No. 08-11586 (KG) (Bankr. D. Del. Feb. 6, 2009) [Docket No. 2528].

### III.    THE COURT SHOULD APPROVE THE SALE OF THE DEBTOR'S IP FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND DISTRIBUTION OF PROCEEDS

20.    The Debtor seeks to sell its IP free and clear of liens, claims, encumbrances and interests, with any such liens, claims, encumbrances and interests attaching to the proceeds of the Sale with the same validity, priority and effect in place prior to the Sale. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the

property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f). Courts have interpreted the requirements of Section 363(f) to be disjunctive. *See, e.g., In re Elliot*, 94 B.R. 343 (Bankr. E.D. Pa. 1988). Accordingly, if any of the five conditions set forth in section 363(f) are met, then a debtor is empowered to sell property free and clear of liens. *Id*.

21.    The sale of the IP or some portion thereof satisfies the requirements of section 363(f). All relevant parties, including all known parties with an interest in the IP will have sufficient notice and the ability to object to the transaction. Accordingly, if a party with an interest in the subject property does not timely object to a transaction in accordance with the proposed procedures, the Debtor submits that such party has consented to the assumption and assignment within the meaning of section 363(f)(2) of the Bankruptcy Code. *See In re Harbour E. Dev., Ltd.*, 2012 WL 1851015, at *12 (Bankr. S.D. Fla. May 12, 2012) (Cristol, J.); *Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D. N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)).[8]

22.    Moreover, the Debtor believes that the only party with an interest in the IP or its proceeds is JNS INVT LLC, the prepetition secured lender. JNS INVT LLC has consented to the Debtor's free and clear sales of the IP.

---

[8]    Pursuant to a certain Agency Agreement governing the going-out-of-business sales, the Debtor granted Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC ("Hilco/Gordon Brothers") a limited, nonexclusive license to use, among other things, its trade name and email list solely in the conduct of the GOB sale. The Debtor does not believe such license constitutes an interest in the IP. However, to the extent the closing of the IP Sale occurs prior to the conclusion of the GOB sale, the Debtor will sell the relevant IP subject to Hilco/Gordon Brothers' limited license.

12

## IV.  THE COURT SHOULD APPROVE THE
## DEBTOR'S ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

23.    At this time, the Debtor does not anticipate that the IP Sale will involve the assumption and assignment of any IP Agreements.  However, in an abundance of caution, the Debtor requests authorization to assume and assign to a purchaser, to the extent it is later determined to be applicable, any IP Agreements (or other related executory contracts).

24.    Section 365 of the Bankruptcy Code allows the debtor to maximize the value of the debtor's estate by assuming executory contracts or unexpired leases that benefit the estate and by rejecting those that do not.  *See COR Route 5 Co., LLC v. The Penn Traffic Co. (In re The Penn Traffic Co.)*, 524 F.3d 373, 382 (2d Cir. 2008).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.  *See, e.g., In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court").

25.    The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten a court's ability to

6454406-7

control a case impartially.  *See Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir. 1985).  Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for "actual pecuniary loss" relating to such default. 11 U.S.C. 365(b)(1).  Under section 365(f) of the Bankruptcy Code, a debtor, after assuming a contract, may assign its rights under the contract to a third party. 11 U.S.C. § 365(f).

26.    The words "adequate assurance of future performance" must be given a "practical, pragmatic construction" through "consideration of the facts of the proposed assumption."  *In re Fleming Cos.*, 499 F.3d 300 (3d Cir. 2007) (*quoting Cinicola v. Scharffenberger*, 248 F.3d 110 at 120 n.10 (3d Cir. 2001).  *See also Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (same); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

27.    Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of a lease from debtor has financial resources and has expressed a willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding chief determinant of adequate assurance is whether rent will be paid).  *See also In re Vitanza*, Case No. 98-19611DWS, 1998 WL 808629,

6454406-7

AT *26 (Bankr. E.D. Pa. 1998) ("The test is not one of guaranty but simply whether it appears that the rent will be paid and other lease obligations met.").

28.     The assumption and assignment of certain executory contracts may be an important component of the sale of certain of the IP.  It is thus an appropriate exercise of business judgment for the Debtors to agree to assume and assign the IP Agreements (and any related executory contracts. Additionally, the Debtors submit that the notice provisions and objection deadline for counterparties to raise objections to the assumption and assignment of contracts, as proposed in this Motion, are adequate to protect the rights of counterparties (if any) to the Debtor's IP Agreements.  Furthermore, the Debtors will demonstrate adequate assurance of future performance at the IP Sale Hearing.

## V. <u>REQUEST FOR IMMEDIATE RELIEF</u>

29.     Rule 6004(h) of the Bankruptcy Rules provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or lease… is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Due to the facts of this case and the Debtor needs to proceed in an expedited manner to monetize the IP and avoid incurring unnecessary administrative obligations.  Accordingly, the Debtor requests that any order approving the Sales be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) and 6006(d) are waived.

## <u>NOTICE</u>

30.     No trustee or examiner has been appointed in this chapter 11 case.   Further, the Debtor intends on fulfilling the other notice requirements requested herein.  The Debtor submits that no other or further notice need be provided.

6454406-7

## NO PRIOR REQUEST

31.    No previous request for the relief sought herein has been made by the Debtor to this or any other court.

**WHEREFORE** the Debtor respectfully requests (i) entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit "B"**, (ii) approval of the Bidding Procedures, substantially in the form attached hereto as **Exhibit "C"**, (iii) approval of the Sale Notice, substantially in the form attached hereto as **Exhibit "D"**, (iv) entry of the Sale Order, substantially in the form attached hereto as **Exhibit E**; and (v) such other and further relief as the Court deems just and proper.

Dated: July 10, 2015                    Respectfully submitted,

                                                        BERGER SINGERMAN LLP
*Counsel for the Debtors and Debtors in Possession*
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340

By:    */s/  Christopher A. Jarvinen*
        Paul Steven Singerman
        Florida Bar No. 378860
        singerman@bergersingerman.com
        Christopher A. Jarvinen
        Florida Bar No. 21745
        cjarvinen@bergersingerman.com
        Paul A. Avron
        Florida Bar Number 050814
        pavron@bergersingerman.com

6454406-7

**EXHIBIT A**
**SCHEDULE OF INTELLECTUAL PROPERTY**
**Schedule 1.1(a)**
**Trademarks**

All trademarks owned by Simply Fashion Stores, Ltd. to include but not limited to:

**Trademark Schedule**[9]

| Trademark | Status in Trademark Office | Reg. No. | Serial No. | Reg. Date | Status |
|---|---|---|---|---|---|
| Fashion Trend | Registered | 3126370 | 78686808 | 8/6/2006 | Live |
| B.F.Y. Boots For You | Registered | 2748500 | 76382645 | 8/5/2003 | Live |
| Jamie Nicole | Registered | 2362388 | 75801295 | 6/27/2000 | Live |
| Simply Plus | Registered | 1939989 | 74619658 | 12/5/1995 | Live |
| Simply Fashion | Registered | 2007442 | 74574096 | 10/15/1996 | Live |
| Simply 6 | Registered | 1572593 | 73789691 | 12/19/1989 | Live |
| Simply | Registered | 1532425 | 73744253 | 3/28/1989 | Live |
| Erica Brooke | Registered | 2362387 | 75801078 | 6/27/2000 | Live |

---

[9]    The Trademarks listed in this Schedule 1.1(a) represents, to the best of the Debtor's knowledge, all of the Debtor's Trademarks, but to the extent that the Debtor becomes aware of additional Trademarks it reserves the right to file supplemental, revised schedules in advance of the Bid Deadline and include those additional Trademarks in the sale process.

6454406-7

**EXHIBIT A**
**SCHEDULE OF INTELLECTUAL PROPERTY**
**Schedule 1.1(b)**
**Domain Names**

All domain names owned by Simply Fashion Stores, Ltd. to include but not limited to:

**Domain Name Schedule[10]**

| **Domain Name** | **Expiry Date** |
| --- | --- |
| SFDDNS.COM | 3/7/2018 |
| SFDDNE.NET | 3/7/2018 |
| SFMIS.NET | 3/7/2018 |
| SHOPFASHIONTREND.COM | 7/13/2020 |
| SHOPFASHIONTRENDS.COM | 7/13/2020 |
| SIMPLY6.COM | 7/13/2020 |
| SIMPLYFASHION.COM | 7/13/2020 |
| SIMPLYFASHIONCLOTHINGSTORE.COM | 7/13/2020 |
| SIMPLYFASHIONS.COM | 7/13/2020 |
| SIMPLYFASHIONSSTORES.COM | 7/13/2020 |
| SIMPLYFASHIONSTORE.COM | 7/13/2020 |
| SIMPLYFASHIONSSTORES.COM | 7/13/2020 |
| SIMPLYFASHION.INFO | 10/21/2021 |
| SIMPLYFASHIONAPPAREL.COM | 7/24/2022 |
| SIMPLYFASHIONAPPAREL.INFO | 7/25/2022 |

---

[10]    The Trademarks listed in this Schedule 1.1(b) represents, to the best of the Debtor's knowledge, all of the Debtor's Domain Names, but to the extent that the Debtor becomes aware of additional Domain Names it reserves the right to file supplemental, revised schedules in advance of the Bid Deadline and include those additional Domain Names in the sale process.

6454406-7

**Exhibit A**
**Schedule 4.1(c)**

Seller has advised Buyer that the Acquired Assets are or may be subject of the following:

Agency Agreement dated April 17, 2015 between Simply Fashion Stores, Ltd., on the one hand, and Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC, on the other hand, approved by Order of this Court dated May 6, 2015 [ECF No. 195], which shall terminate on June 30, 2015.

6454406-7

**EXHIBIT B**
**PROPOSED BIDDING PROCEDURES ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                    Chapter 11 Cases

ADINATH CORP. and SIMPLY                  Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                  (Jointly Administered)

      Debtors.
_____/


**ORDER (I) APPROVING BIDDING AND AUCTION PROCEDURES FOR
SALE OF INTELLECTUAL PROPERTY, AND (II) SETTING SALE HEARING
DATE AND OBJECTION DEADLINES**

**THIS MATTER** came before the Court on the ___ day of _____ ___, 2015 at ____

a.m./p.m. in Miami, Florida, upon the motion dated July ___, 2015 [ECF No. ___] (the

"Motion"), of the debtor and debtor in possession, Simply Fashion Stores, Ltd. ("Simply

Fashion" or "Debtor"), for an order pursuant to sections 105, 363 and 365 of the Bankruptcy

---

[1]    The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax
identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply
Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

6454406-7

Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) approving the bidding and auction procedures attached hereto as **Exhibit "A"** (the "Bidding Procedures") for the sale of the Debtor's intellectual property (the "IP"), (ii) setting dates for the sale hearing (the "Sale Hearing"), and (iii) authorizing and approving (a) the sale (the "Sales") of the IP[2], free and clear of all interests, including liens, claims, and encumbrances, (b) the assumption and assignment of IP, and (c) granting related relief; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C.§ 157; and adequate notice of the Motion having been given and it appearing that no other of further notice need be given; and upon the arguments made at the hearing held on _____ ___, 2015 (the "Hearing"), and having heard the objections made to the relief sought in the Motion; and after due deliberation and sufficient cause therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     The relief granted herein is in the best interests of the Debtor, its estate, its creditors and other parties in interest.

B.     The notice of the Motion and the Hearing given by the Debtor constitutes due and sufficient notice thereof.

C.     The Debtor, through its Chief Restructuring Officer has provided good and sufficient reasons and has demonstrated a compelling and sound business justification for the Court to:  (1) approve the Bidding Procedures in the form annexed hereto as **Exhibit "A"** and (2) set the date for IP Sale Hearing and corresponding objection deadlines.

---

[2]    All terms not otherwise defined herein shall have the meanings assigned to them in the Motion.

2

D.    The Bid Procedures are reasonable and appropriate, and represent the best method of maximizing the realizable value of the Debtor's IP.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is granted to the extent provided herein.

2.    All objections filed in response to the relief granted herein, to the extent not resolved as set forth herein or at the Hearing, are overruled.

3.    The Bidding Procedures are approved and the Debtor is authorized to solicit bids for the IP and to conduct the Auction in the manner set forth in the Bidding Procedures.

4.    The hearing to consider approval of the Sales of the IP shall be held on_____, 2015 at _____ **a.m./p.m. (prevailing Eastern Time).**

5.    Objections, if any, to the Sales shall be made in writing, shall state with particularity the grounds therefore, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules"), and shall be filed with the Bankruptcy so as to be actually received:

(1)    with respect to objections to the Sales, no later than **August __, 2015 at 4:00 p.m. (prevailing Eastern Time**) (the "Objection Deadline") by: (i) the Debtor, c/o KapilaMukamal LLP, 1000 South Federal Highway, Suite 200, Fort Lauderdale, FL 33316, Attn: Soneet R. Kapila, CRO; (ii) the Debtor, 2110 N.W. 95th Avenue, Miami, FL 33172, Attn: Swapnil Shah; (iii) counsel to the Debtor, c/o Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Paul Steven Singerman, Esq. and Christopher A. Jarvinen, Esq.; (iv) Hilco IP Services, LLC d/b/a Hilco Streambank, 1500 Broadway, Suite 810, New York, NY 10036, Attn: Jack Hazan and Dmitriy Chemlin; (v) counsel to Hilco, c/o Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell

Avenue, 23rd Floor, Miami, FL 33131, Attn: Scott L. Baena, Esq. and Jay Sakalo, Esq.; (vi) counsel to JNS INVT, LLC, c/o Genovese, Joblove & Battista, 100 S.E. 2nd Street, Suite 4400, Miami, FL 33131, Attn: Paul Battista, Esq., (vii) counsel to the Official Committee of Unsecured Creditors, c/o Cooley LLP, 1114 Avenue of the Americas, New York, N.Y. 10036-7798, Attn: Jay R. Indyke, Esq. and Richard S. Kanowitz, Esq., with a copy to GrayRobinson, P.A., 333 S.E. 2nd Avenue, Suite 3200, Miami, FL 33131, Attn. Robert Schatzman, Esq. and Steven J. Solomon, Esq.; and (viii) the U.S. Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33130.

6.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry hereof and this Order shall be immediately effective and enforceable upon its entry.

7.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # #

Submitted by:
Christopher A. Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: cjarvinen@bergersingerman.com

Copies furnished to:
Christopher A. Jarvinen, Esq.
*(Attorney Jarvinen is directed to serve a signed copy of this Order upon all interested parties and to file a Certificate of Service with the Court.)*

4

6454406-7

**EXHIBIT C**
**BIDDING PROCEDURES**

5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

ADINATH CORP. and SIMPLY                        Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                        (Jointly Administered)

       Debtors.
_____/

## INTELLECTUAL PROPERTY SALE BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed

with respect to the proposed sales (the "Sales") of the interests held by Simply Fashion Stores,

Ltd. (the "Debtor") in its intellectual property.

1.      On July __, 2015, the Debtor filed its *Motion For An Order (I) Approving The*

*Bidding And Auction Procedures For The Sale Of Intellectual Property , (II) Setting Intellectual*

*Property Sale Hearing Dates, (III) Authorizing And Approving The Sale Of Intellectual Property*

*Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (IV) Granting*

*Certain Related Relief* [ECF No. __] (the "IP Sale Motion").

2.      On _____, 2015, the United States Bankruptcy Court for the Southern District

of Florida (the "Bankruptcy Court") entered an Order approving these Bidding Procedures and

approving auction procedures for the Sales [ECF No. __] (the "Bidding Procedures Order").

The Bidding Procedures Order scheduled _____ ___, 2015 (or such later date as may be

---

[1]    The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

6454406-7

determined by the Bankruptcy Court), as the date when the Bankruptcy Court will conduct the hearing ("IP Sale Hearing") to authorize the Debtor to conduct the Sales.

3.      The Bidding Procedures set forth herein describe, among other things, the assets available for the Sales, the manner in which bids become Qualified Bids (as defined herein), the receipt and negotiation of bids received, the conduct of any subsequent Auctions (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof. In the event that the Debtor and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

4.      The assets proposed to be sold in the Sales are the Debtor's interests in the intellectual property identified in **Exhibit "1"** hereto.

## "As Is, Where Is"

5.      Any sale, assignment, or other disposition of each of the IP or any portion thereof will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or its estate.

## Free Of Any And All Interests

6.      The Debtor shall request language in any Order approving the Sales providing that all of the Debtor's rights, title and interest in and to the IP or any portion thereof shall be sold pursuant to section 363(f) of title 11 of the United States Code (the "Bankruptcy Code") free and clear of all interests, including, without limitation, liens, claims, encumbrances, mortgages, and security interests, which shall attach to the net proceeds received by the Debtor as a result of the Sales with the same force and effect that they now have, subject to the Debtor's claims and defenses and any further Order of the Bankruptcy Court.

2

**Due Diligence**

7.    Each Qualified Bidder (as defined herein) shall be deemed to acknowledge: (a) that it had an opportunity to inspect and examine the IP or any portion thereof and to review all pertinent documents with respect to the IP or any portion thereof  prior to making its offer and that each such Qualified Bidder relied solely on that review and upon its own investigation and inspection of the IP or any portion thereof in making its offer, (b) that it is not relying upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise of the Debtor, its agents or representatives; and (c) that the occupancy of the premises set forth in the Leases may not be available until the completion of any going out of business sale at the premises.

**Bid Deadline**

8.    A bidder (the "Bidder" and collectively, the "Bidders") who desires to make a bid for some or all of the IP must deliver the Required Bid Documents (as defined herein) as follows:

(i)    Bids must be delivered so as to be received not later than **11:59 p.m. (ET) on August 6, 2015** (the "Bid Deadline) to: (i) the Debtor, c/o KapilaMukamal LLP, 1000 South Federal Highway, Suite 200, Fort Lauderdale, FL 33316, Attn: Soneet R. Kapila, CRO; (ii) the Debtor, 2110 N.W. 95th Avenue, Miami, FL 33172, Attn: Swapnil Shah; (iii) counsel to the Debtor, c/o Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Paul Steven Singerman, Esq. and Christopher A. Jarvinen, Esq.; (iv) Hilco IP Services, LLC d/b/a Hilco Streambank, 1500 Broadway, Suite 810, New York, NY 10036, Attn: Jack Hazan and Dmitriy Chemlin; (v) counsel to Hilco, c/o Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Avenue, 23rd Floor, Miami, FL 33131, Attn: Scott L. Baena, Esq., and Jay Sakalo, Esq.; (vi) counsel JNS INVT, LLC, Genovese, Joblove & Battista, 100 S.E. 2nd Street, Suite 4400, Miami, FL 33131, Attn: Paul Battista, Esq.; (vii) counsel to the Official Committee of

Unsecured Creditors, c/o Cooley LLP, 1114 Avenue of the Americas, New York, N.Y. 10036-7798, Attn: Jay R. Indyke, Esq. and Richard S. Kanowitz, Esq. with a copy to GrayRobinson, P.A., 333 S.E. 2nd Avenue, Suite 3200, Miami, FL 33131, Attn. Robert Schatzman, Esq. and Steven J. Solomon, Esq.; and (viii) the U.S. Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33130.

(ii)    The Debtor, in consultation with the Committee, may extend the Bid Deadlines once or successively, but are not obligated to do so.

## Bid Requirements

9.    All bids must include the following documents (the "Required Bid Documents"):

a.    A written offer on Bidder' s corporate letterhead (or, if on behalf of Bidder by Bidder's legal counsel, then on Bidder's legal counsel's letterhead) for the purchase of the IP or any portion thereof must include: (i) the full name and identity of the proposed purchaser (and any beneficial owner thereof if the purchaser is not a publicly traded entity) of each portion of the IP, (ii) the amount being offered for some or all of the IP (if more than one portion of the IP, then set forth in the form of an allocation schedule), and (iii) the intended use of the IP in Bidder's offer Such written offer must also expressly state that if Bidder is the successful Bidder, it is ready, willing, and able to execute a purchase agreement  substantially in the form attached hereto as **Exhibit "2"**.

b.    A good faith deposit equal to 10% of the bid amount for the IP that is the subject of such bid (the "Good Faith Deposit") in immediately available funds, i.e., a wire transfer or a certified bank check from a U.S. bank payable to the order of Simply Fashion Stores, Ltd. (or such other party as the Debtor may determine).

c.    All written offers must expressly state that the Bidder's offer is (and all offers will be considered to be) irrevocable until the earlier to occur of (i) the Closing (as defined herein) or (ii) thirty (30) days following the Auction (unless such bid is sooner expressly rejected in writing by the Debtors).

## Qualified Bids

10.    A Bid will be considered only if the Bid:

a.    proposes, for the IP or some portion thereof that is the subject of such Bid, consideration, which sum shall be paid in immediately available funds;

b.    is unconditional, subject only to the Debtor obtaining any necessary approval or authorization from the Bankruptcy Court;

c.    includes a commitment to consummate the purchase of the IP or any portion thereof on or within two business days following the later of (i) the IP Sale

4

Hearing or (u) the Sale Termination Date (as defined in the Sale Motion) with respect to such Lease;

      d.      is received by the Bid Deadline; and

      e.      agrees to waive any right to assert a claim for reimbursement of any fees and/or expenses of such bidder as an administrative expense, or otherwise, including, without limitation, as a substantial contribution; and

11.      In addition, to be a Qualified Bid, each Bidder must be prepared to demonstrate to the Debtor its ability to consummate the purchase of the IP or any portion thereof.

12.      A Bid will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements, including those in Paragraphs 10 and 11 (a "Qualified Bid"); provided, however, the Debtor will have the right, in consultation with the Committee, to entertain bids for the IP or some portion thereof do not conform to one or more of the requirements specified herein and may deem such bids to be Qualified Bids. A bidder from whom the Debtor receive a Qualified Bid will be designated a "Qualified Bidder".

13.      The IP or some portion thereof and other pertinent documents will be available for inspection prior to the Bid Deadline, through a portal to be made available to interested bidders that have executed a non-disclosure agreement.

### Joint Bids

14.      The Debtor will be authorized to approve joint bids in the Debtor's discretion, after consulting with the Committee, on a case-by-case basis.

### Auctions

15.      If the Debtor receives more than one Qualified Bid for the IP or some portion thereof, the Debtor will conduct a live auction, telephonic auction or request the bidders submit "best and final bid" for such IP at **10:00 a.m. (ET) on August 10, 2015**, or such later time or other place as the Debtor may notify all Qualified Bidders who have submitted Qualified Bids.

6454406-7

16.     The Auction will be conducted in accordance with the following procedures:

a.     Only the Debtor, members of the statutory committee of unsecured creditors (the "Committee"), and any Qualified Bidders who have timely submitted Qualified Bids for the IP or some portion thereof which are subject to the Auction will be entitled to attend any telephonic Auction. Only Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

b.     Immediately prior to the commencement of the Auction for the IP or some portion thereof, with respect to the Qualified Bid or combination of Qualified Bids which the Debtor determine to be the highest or otherwise best offer for the IP or some portion thereof subject to that Auction, the Debtor will provide information as to the identity of such Qualified Bidder(s) and the purchase price associated with such Qualified Bid(s) to all Qualified Bidders for the IP or some portion thereof who have informed the Debtor of their intent to participate in the Auction. Notwithstanding such determination, the Debtor reserves the right, in consultation with the Committee, to determine which bid, or subsequent bid, is the Successful Bid (as defined herein), following the conclusion of the Auction based upon a number of factors and other considerations.

c.     In the event the Debtor receives only a single Qualified Bid for a the IP or some portion thereof, such IP will not be subject to bidding at the Auction, and the Debtor, in consultation with the Committee, may seek to assume and assign such IP or to enter into a termination agreement at the IP Sale Hearing following the Auction, if such Qualified Bid is otherwise acceptable to the Debtor. In the event the Debtor receives multiple Qualified Bids for the IP or some portion thereof, such IP, unless previously sold, otherwise disposed of or withdrawn, will be offered for sale at the Auction, either in bulk or separately.

d.     All bidding shall be in increments determined by the Debtor and its advisors, after consultation with the Committee.

e.     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to attend any telephonic auction for all subsequent bids with the understanding that the identity of each bidder and the purchase price of each subsequent bid will be fully disclosed to all other applicable bidders throughout the entire Auction and put on the record.

f.     The Debtor, in consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction (i.e., the amount of time allotted to make subsequent bids), provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules issued by the United States Bankruptcy Court for the Southern District of Florida (the "Local Bankruptcy Rules") or any order of the Bankruptcy Court entered in connection herewith.

6

g.    The Debtor intends to sell its interest to the Bidder making the highest or otherwise best Qualified Bid at or prior to the Auction for the IP or some portion thereof. Formal acceptance of a bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the Sales of the IP or some portion thereof to such Bidder or its designated assignee and, as applicable, the assumption and assignment or entry into termination agreements for such IP.

## **Jurisdiction**

17.    Each Bidder, by submitting a bid, is deemed to have submitted itself to the jurisdiction of the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction over any disputes arising out of or related to the Bidding Procedures, and each Bidder, by submitting the bid, has acknowledged and consented to such jurisdiction and has waived any right to trial by jury in connection with any disputes related to Debtor's qualification of Bids, the Auction and the construction and enforcement of these Bidding Procedures.

## **Selection of Successful Bid**

18.    At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Debtor, after consultation with its advisors and the Committee, will announce for the IP or some portion thereof which bid is the highest or otherwise best bid (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)") and which bid is the second highest or otherwise best bid, if any (the "Back-Up Bid(s)" and such bidder(s), the "Back-Up Bidder(s)"). Within one business day of the Debtor's announcement of a Successful Bidder, such bidder shall supplement its Good Faith Deposit in an amount equal to the difference between (x) 10% of the Successful Bid and (y) the Good Faith Deposit previously provided by the bidder with respect to it applicable Bid.

19.    The Debtor will sell the IP or some portion thereof to the Successful Bidder(s) upon the approval of such Successful Bid(s) by the Bankruptcy Court at the IP Sale Hearing. The Debtor's presentation of a particular Successful Bid to the Court for approval does not constitute

the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the IP Sale Hearing.

**Consultation**

20.     The Debtor will consult with the Committee on an ongoing basis throughout the sale and auction process.

**The IP Sale Hearings**

21.     The IP Sale Hearings will be held before the Honorable Laurel M. Isicoff **on August __, 2015 at ____ a.m/p.m.** (ET) in the United States Bankruptcy Court for the Southern District of Florida, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom 8, Miami, FL 33128, but may be adjourned or rescheduled by Debtor, in consultation with the Committee, subject to Bankruptcy Court approval, as necessary, without further notice by an announcement of the adjourned date at the Lease Sale Hearing.

22.     If the Debtor does not receive any Qualified Bids the Debtor will report the same to the Bankruptcy Court at the IP Sale Hearing on **August __, 2015**, and may proceed with the abandonment of the IP under 11 U.S.C. § 554(a) and Local Rule 6007-1.

23.     If the Debtor receives one or more Qualified Bids for the IP or some portion thereof, then, at the IP Sale Hearing on **August __, 2015**, the Debtor will seek approval of the Successful Bid for such IP, and, at the Debtor's election, the Back-Up Bid, as well as the Sales and, as applicable, assumption and assignment of such IP or entry into termination agreements for such IP.

**The Closing**

24.     Except as otherwise provided in a written offer that has been accepted by the Debtor, upon approval of the Sales and entry into a purchase agreement for such IP with the Successful Bidder by the Bankruptcy Court, the closing (the "Closing") of the Sales of the IP or

8

some portion thereof shall take place on or within two (2) business days following the later of (i) such date that is within two (2) business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under FRBP 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and (ii) the Sale Termination Date. With respect to the Closing, time of performance by the Successful Bidder is of the essence.

25.     Following approval of the Sales to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to timely consummate the Sales because of a breach or failure to perform on the part of such Successful Bidder(s), except for a failure of a condition precedent beyond the control of either the Debtor or the Successful Bidder, then the Debtor shall retain the Good Faith Deposit as liquidated damages and the Back-Up Bid(s) will be deemed to be the Successful Bid(s) and the Debtor, in consultation with the Committee, will be authorized, but not directed, to effectuate a Sale to the Back-Up Bidder(s) subject to the terms of such Back-Up Bid without further order of the Bankruptcy Court.

26.     At the Closing, the balance of the purchase price shall be paid by the Successful Bidder (or, as applicable, the Back-Up Bidder) by wire transfer or an endorsed bank or certified check.

## **Return of Good Faith Deposits**

27.     The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder and, at the Debtor's election, the Back-Up Bidder) for the IP or some portion thereof will be held by the Debtor and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until the earlier of (i) two (2) business days following the Closing of the Sale

and (ii) thirty (30) days following the applicable Auction (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), will be applied against the payment of the purchase price upon Closing of the Sale to the Successful Bidder(s). If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to timely consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit, and such Good Faith Deposit will irrevocably become property of the Debtor's estate. On the Return Date, the Debtor will return the Good Faith Deposits of all other Qualified Bidders for Leases, together with the accrued interest thereon.

## Reservations Of Rights

28.    The Debtor, in consultation with the Committee: (i) may determine which Qualified Bid, if any, is the highest or otherwise best bid, (ii) may reject at any time any bid that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or these Bidding Procedures, or (c) contrary to the best interests of the Debtor, its estate and creditors as determined by the Debtor in its sole discretion, and (iii) remove any portion of the IP from the Auction and sell directly to a proposed purchaser.  The Debtor will have no obligation to accept or submit for Court approval any offer presented at the Auction except such written offers as may have been accepted by the Debtor, in consultation with the Committee

**Miscellaneous Terms of Sale**

29.     Unless otherwise indicated by the Debtor at the Auction, Sales of the IP or some portion thereof shall not include personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located in the premises currently leased or owned by the Debtor.

30.     All sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of personal property of the Debtor in connection therewith shall be the sole responsibility of the Successful Bidder and shall be paid to the Debtor at the Closing of each transaction.

31.     The Debtor, in consultation with the Committee, at or before each Auction, may impose or modify the terms and conditions herein as they determine to be in the best interests of the Debtor, its estate, creditors and other parties in interest. The Debtor, in consultation with the Committee, may revise the procedures herein without Court approval to enable Qualified Bidders to submit Qualified Bids for smaller subsets of the IP of a greater package submitted by such Qualified Bidders, provided no IP is included in such package.

*   *   *

6454406-7

**EXHIBIT "1"**
**INTELLECTUAL PROPERTY**

12

**EXHIBIT "2"**
**PURCHASE AGREEMENT**

ASSET PURCHASE AGREEMENT

by and among

Simply Fashion Stores, Ltd.

and

_____

Dated as of _____ ____, 2015

6454406-7

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement""), dated as of _____ ___, 2015 (the "Effective Date""), is made by and between Simply Fashion Stores, Ltd., a limited partnership organized under the laws of the state of Alabama (the "Seller"), and _____, an _____ (the "Buyer"). Capitalized terms used in this Agreement are defined or cross-referenced in Article 10.

A.      The Seller and Adinath Corp. each commenced voluntary bankruptcy cases (each a "Bankruptcy Case," and together the "Bankruptcy Cases") under title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Bankruptcy Court") on April 16, 2015 (the "Petition Date"). The Bankruptcy Cases are being jointly administered under Case No. 15-16885-LMI.

B.      Buyer desires to purchase the Acquired Assets and assume the Assumed Liabilities from Seller, and Seller desires to sell, convey, assign, and transfer to Buyer the Acquired Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with §§105 and 363 and other applicable provisions of the Bankruptcy Code.

C.      On _____ ___, 2015, the Bankruptcy Court entered an order (the "Sale Procedures Order"), *inter alia*, approving bidding procedures for the sale of Seller's intellectual property.

D.      The Acquired Assets and Assumed Liabilities are assets and liabilities of Seller, which are to be purchased by the Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to §§ 105, 363, and 365 of the Bankruptcy Code (the "Sale Order"), all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code.

E.      The execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth herein are subject to, among other things, the entry of the Sale Order.

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants, and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, Seller and Buyer hereby agree as follows:

## ARTICLE 1
## PURCHASE AND SALE OF THE ACQUIRED ASSETS

Section 1.1.    Transfer of Acquired Assets. At the Closing, and upon the terms and conditions herein set forth, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of Seller's right, title and interest in, to and under the following property wherever located and whether or not reflected on the Seller's books and records free and clear of all liens, claims and encumbrances (the "Acquired Assets").

(a)      all right, title and interest in and to the trademarks, service marks, trade names, service names, brand names, trade dress rights, logos, corporate names, and general intangibles of a like nature, including the names Simply Fashion Stores and any derivatives thereof and any common law rights, owned by Seller including those listed on <u>Schedule 1.1(a)</u> (the "<u>Trademarks</u>") together with the goodwill of any business symbolized thereby and all applications, registrations, and renewals related thereto (subject to Seller's right to the continued use thereof through the Sale Termination Date) and the right to bring any action at law or in equity for the infringement of the Trademarks occurring prior to the Sale Termination Date, including the right to receive any proceeds and damages therefrom;

(b)      all right, title, and interest in the domain names (subject to the proviso below in this subsection (b), Web sites and URLs owned or used by Seller including those listed on Schedule 1.1(b);

(c)      all rights, title and interest in the data relating to customers of the Seller that relate to the Trademarks that are part of the Acquired Assets, including customer phone numbers and email addresses;

(d)      all right, title and interest in and to the copyrights owned by Seller including those listed on <u>Schedule 1.1.(d)</u> and all other copyrights owned by Seller, including designs, patterns, specifications, styles, style and pattern books, websites, Facebook pages, Twitter pages, and Instagram and other social media pages as more fully described on Schedule 1.1(d) (the "<u>Copyrights</u>") and the right to bring any action at law or in equity for the infringement of such Copyrights occurring prior to the Closing Date, including the right to receive all proceeds and damages therefrom;

(e)      to the extent not included in Section 1.1 (a-f) above, and to the extent transferable without cost and expense to Seller, all software, telephone numbers, facsimile numbers, email addresses, directory listings, customer and supplier lists, written works, visual works, audio works, multimedia works, web site, idea, concept, patent, method, process, discovery or other intangible asset or Intellectual Property Right of any nature, if any, whether in use, operational, active, under development or design, non-operative or inactive, owned, marketed, maintained, supported, used, licensed or otherwise held for use by, or licensed to or with respect to which rights are granted to, a Person, whether arising under statutory or common law in any jurisdiction or otherwise, and includes the goodwill of Seller's business symbolized by and associated with the foregoing, all applications, registrations, and renewals related thereto and the right to bring any action at law or in equity for the infringement of such Intellectual Property Rights occurring prior to the Closing, including the right to receive all proceeds and damages therefrom.

Section 1.2.    <u>Excluded Assets</u>. The Acquired Assets do not include any assets of Seller not expressly identified in Section 1.1 above as Acquired Assets (all such assets not being acquired by Buyer being herein referred to as the "<u>Excluded Assets</u>").

Section 1.3.    <u>Assumption of Liabilities</u>. At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform, and discharge when due, only the following liabilities of Seller (the "<u>Assumed Liabilities</u>"):

2

(a)    all liabilities of Seller for Transaction Taxes, if any, payable in connection with the transactions contemplated by this Agreement, subject to <u>Section 6.1</u> of this Agreement;

(b)    the liabilities and obligations arising on or after the Closing Date, relating solely to or arising out of Buyer's ownership and operation of the Acquired Assets; provided, however, that (i) the Assumed Liabilities shall not include liabilities and obligations arising out of the Seller's ownership of the Acquired Assets prior to the Closing Date and (ii) this Section shall not limit the obligations of Seller pursuant to <u>Section 4.1</u> hereof (and shall be subject thereto).

Section 1.4.    <u>Retention of Liabilities</u>. Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter. All such other liabilities and obligations shall be retained by and remain liabilities and obligations of Seller (all such liabilities and obligations not being assumed being herein referred to as the "<u>Excluded Liabilities</u>").

## ARTICLE 2

## CONSIDERATION

Section 2.1.    <u>Consideration</u>.  The aggregate consideration for the sale and transfer of the Acquired Assets shall be _____ ($_____) (the "<u>Purchase Price</u>"), which price shall be payable and deliverable in accordance with Section 3.3 and the assumption by Buyer of the Assumed Liabilities.

Section 2.2.    <u>Deposit</u>. Concurrently with the execution and delivery of this Agreement, Buyer shall pay to Seller an amount equal to ten percent (10%) of the Purchase Price as a deposit (the "<u>Deposit</u>"). If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with <u>Section 9.2</u>. If the Closing occurs, the Deposit shall be applied (without interest) towards the Purchase Price.

Section 2.3.    <u>363 Sale</u>. Seller has sought approval and entry of the Sale Order pursuant to the motion filed by Seller for entry of the Bid Procedures Order and the Sale Order under Sections 105, 332, and 363 of the Bankruptcy Code. The Sale Order shall be in a form reasonably acceptable to Buyer and Seller. Prior to consideration by the Bankruptcy Court of entry of the Sale Order, Buyer's agreement to purchase the Acquired Assets on the terms set forth herein will be subjected to competitive bids in an auction to be conducted in accordance with the Bid Procedures Order (the "<u>Auction</u>").

## ARTICLE 3
## CLOSING AND DELIVERIES

Section 3.1.    <u>Closing</u>. Absent an agreement by the Debtor to the contrary, the consummation of the transactions contemplated hereby (the "<u>Closing</u>") shall take place the later of (i) such date that is within two (2) business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under Fed. R. Bankr. P. 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and (ii) the first business day following the termination of the Hilco Merchant

3

Resources, LLC/Gordon Brothers Retail Partners, LLC-Simply Fashion Stores, Ltd. Agency Agreement, but in any event no later than August 31, 2015 (the "Sale Termination Date").

Section 3.2.    Seller's Deliveries. At the Closing, the sale, transfer, assignment and delivery by Seller of the Acquired Assets to Buyer, as herein provided, shall be effected on the Sale Termination Date by quit claim deed, bills of sale, endorsements, assignments and other instruments of transfer and conveyance (including assignments appropriate for recording in the USPTO, as applicable), as well as the electronic transfer of all files and records of Seller relating to the Acquired Assets excluding any representations, warranties or covenants (other than those expressly set forth herein) and shall otherwise be consistent with the terms of this Agreement reasonably satisfactory in form and substance to counsel for Buyer and Seller

Section 3.3.    Buyer's Deliveries. At the Closing:

(a)    At Closing, Buyer shall pay to Seller, by wire transfer of immediately available funds in accordance with instructions provided by the Seller, an amount equal to the Purchase Price; and

(b)    Buyer shall execute and deliver to Seller an instrument of assumption of liabilities with respect to the Assumed Liabilities reasonably satisfactory in form and substance to counsel for Seller and Buyer.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES

Section 4.1.    Representations and Warranties of Seller.  Seller represents and warrants to Buyer as follows:

(a)    Corporate Organization. Seller is a limited partnership duly organized and validly existing under the laws of the State of Alabama. Subject to any necessary authority from the Bankruptcy Court, Seller has all requisite corporate power and authority to own its properties and assets and to consummate the transactions contemplated hereby.

(b)    Authorization and Validity: No Conflict.  Seller has all requisite corporate power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder. Seller's execution and delivery of this Agreement and its performance of its obligations hereunder have been duly authorized by all necessary corporate action of Seller, and no other action on the part of Seller is necessary to authorize such execution, delivery, and performance. This Agreement has been duly executed by Seller and, subject to the Bankruptcy Court's entry of the Sale Order, Seller's obligations hereunder are valid, binding, and enforceable. The execution, delivery, and performance by Seller of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Seller and does not and will not violate any provision of law, or any order applicable to Seller, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract, agreement, policy (including privacy policy) or other obligation to which Seller is a party or by which it is bound or to which any of its properties or assets is subject. The execution,

delivery, and performance of this Agreement by Seller does not and will not require the consent or approval of, or filing with, any government or any other Person.

(c)     <u>Title and Ownership: Condition of Trademarks.</u>

(i)     Except as set forth on <u>Schedule 4.1(c)</u>. Seller has good title and is the sole and exclusive owner of any and all right, title, and interest in and to the Acquired Assets, including the Trademarks. As of the date hereof, no proceeding is pending (including, without limitation, one initiated by the FTC) or threatened in a writing received by Seller, nor has any claim or demand been made, which challenges or challenged the legality, validity, enforceability, use or exclusive ownership by Seller of any or all of the Acquired Assets, including any Trademark. Subject to the entry of the Sale Order, at the Closing, Seller will have the right to transfer the Acquired Assets to Buyer free and clear of all Liens, restrictions on use or disclosure obligations and will not execute any agreement in conflict therewith. The customer list (email addresses and phone numbers – only) shall be transferred to Buyer by electronic means and shall contain for each customer the email address and phone numbers --- only (no names, no mailing addresses, and no other personally identifiable information), <u>provided</u>, <u>however,</u> Seller makes no representations or warranties with respect to the validity of any email addresses or phone numbers contained in the Acquired Assets.

(ii)     To Seller's knowledge, none of the Acquired Assets or their respective past or current uses has violated or infringed upon, or is violating or infringing upon, any intangible or Intellectual Property Right of any Person, nor to the Seller's knowledge has any Acquired Asset been violated or infringed upon, or is violating or infringing upon, by any intangible or other Intellectual Property Rights of any Person. Each Trademark within the Acquired Assets is subsisting and in full force and effect and Seller has taken all steps necessary to maintain such Trademarks, including, as applicable, the payment when due of all maintenance and renewal fees and annuities and the filing of all necessary renewals, statements and certifications.

(iii)     The Seller is the registrant of all internet domain names included within the Acquired Assets, and all registrations of such domain names are in good standing until such dates as set forth on Schedule 4.1(c).

(d)     <u>Contracts.</u> As of the Sale Termination Date, except as disclosed on Schedule 4.1(c). there are no license agreements or other contracts of whatsoever nature with respect to any of the Acquired Assets.

(e)     <u>Software.</u> Except as set forth on <u>Schedule 4.1(e)</u> hereto, the Acquired Assets do not include any computer program, operating system, application, firmware or software of any nature other than off-the- shelf software. The Acquired Assets do not include any software licenses or other intangible property. There are no existing and continuing material breaches of the Seller's security procedures and there have been no material attempted or successful unauthorized incidents of access, use, disclosure, modification or destruction of information, data or software or interference with systems operations in all or any portion of the Seller computer systems, including any such breach or incident that requires notice to any Person.

5

Section 4.2. <u>Representations and Warranties of Buyer</u>. Buyer hereby represents and warrants to Seller as follows:

(a)     <u>Corporate Organization</u>. Buyer is an _____, duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation, and has all requisite power and authority to own its properties and assets.

(b)     <u>Authorization and Validity of Agreement</u>. Buyer has all requisite power and authority to enter into this Agreement and to carry out its obligations hereunder. Buyer's execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action by the board of directors (or equivalent) of Buyer, and no other action on the part of Buyer is necessary to authorize such execution, delivery, and performance. This Agreement has been duly executed by Buyer and Buyer's obligations hereunder are valid, binding, and enforceable.

(c)     <u>No Conflict or Violation</u>. The execution, delivery, and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)     <u>Consents and Approvals</u>. The execution, delivery, and performance of this Agreement does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals, and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e)     <u>Investigation by Buyer</u>. Buyer has conducted its own independent review and analysis of the Acquired Assets and the Assumed Liabilities. Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with Seller's Bankruptcy Case. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in <u>Section 4.1</u> (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, its Affiliates, or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws, or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in

6

Section 4.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3.    Warranties Exclusive. The parties acknowledge that the representations and warranties contained in this Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing, Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING THE BUYER ACKNOWLEDGES THAT SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (IV) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL TRADE COMMISSION LAWS OR OTHER LAWS.

Section 4.4.    Survival of Representations and Warranties. Notwithstanding anything to the contrary herein, none of the representations or warranties of Seller set forth in this Agreement or in any certificate or other document delivered pursuant hereto shall survive the Closing.

## ARTICLE 5
## COVENANTS AND OTHER AGREEMENTS

Section 5.1.    Covenants of Seller.  Seller covenants as follows:

(a)    Further Assurances.  At the request and the sole expense of Buyer, at any time after the Closing Date, Seller shall promptly execute and deliver such documents, and take other acts at no additional expense to Seller, as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement, including but not limited to procuring, maintaining, perfecting, registering, transferring, evidencing and enforcing the full benefits, enjoyment, rights, title and interest, on a worldwide basis of the Acquired Assets.

(b)    Seller shall legally change the name of the Seller within 15 Business Days of Closing and thereafter shall use such changed names in the caption or other pleadings in its Bankruptcy Case; provided, however, that Seller may use its current names for the purposes of conducting, administrating and/or closing the Seller's Bankruptcy Case to the extent necessary to refer to the former names, except that Seller shall not use the former names in the caption of pleadings in the Seller's Bankruptcy Case unless required by the Bankruptcy Code or the Bankruptcy Court.

Section 5.2.    Covenants of Buyer.

6454406-7

(a)    <u>Consents & Approvals</u>. Buyer shall use all commercially reasonable efforts to obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement.

(b)    <u>Further Assurances</u>. Buyer shall take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

Section 5.3.    <u>Bankruptcy Matters</u>. Seller and Buyer shall use commercially reasonable efforts to cooperate, assist, and consult with each other to secure the entry of the Sale Order (in form and substance satisfactory to Buyer and Seller) following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement.

## ARTICLE 6
## TAXES

Section 6.1.    <u>Taxes Related to Purchase of Assets</u>. All federal, state, and local sales, transfer, gains, excise, value-added, or other similar Taxes other than income Taxes of Seller, including, without limitation, all state and local Taxes other than income Taxes of Seller in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, the "<u>Transaction Taxes</u>"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and are not exempt under § 1146(a) of the Bankruptcy Code, shall be paid by Buyer. Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement. Seller at Buyer's expense, agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 6.2.    <u>Cooperation on Tax Matters</u>.

(a)    Buyer and Seller agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other required or optional filings relating to Tax matters, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer to any governmental or regulatory inquiry relating to Tax matters.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and Tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Sale Termination Date and transferred and delivered to Buyer hereunder and (ii) coming into existence after the Sale Termination Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period of at least three years from the Sale Termination Date, and will give Seller notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of

them after such period. In addition, from and after the Sale Termination Date, Buyer agrees that it will provide access to Seller and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete any cases under chapter 11 of the Bankruptcy Code of Seller. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 6.3.    Allocation of Purchase Price and Purchase Price Allocation Forms. Buyer and Seller agree to allocate the Purchase Price and the Assumed Liabilities among the Acquired Assets as reasonably determined by the parties (the "Allocation"). Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective Forms 8594 as provided for in Section 1060 of the Code on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed as a result of the transactions contemplated hereby. The Seller and Buyer agree to promptly provide each other with any information necessary to complete such Tax Returns and IRS Forms 8594 (and any corresponding form required to be filed by a state or local taxing authority). The Seller and Buyer shall not take any position on a Tax Return, tax proceeding or audit that is inconsistent with the Allocation except to the extent required otherwise by applicable Law; provided, however, that (i) Buyer's cost for the Acquired Assets may differ from the total amount allocated hereunder to reflect the inclusion in the total cost of items (for example, capitalized acquisition costs) not included in the total amount so allocated and (ii) the amount realized by the Seller may differ from the total amount allocated hereunder to reflect transaction costs that reduce the amount realized for federal income Tax purposes.

Section 6.4.    Tax Payments. Except for Transaction Taxes provided for in Section 6.1, Seller shall be liable for (a) any Tax payable by the Seller with respect to the operation of the business associated with the Acquired Assets on or before the Sale Termination Date; (b) any Tax payable by the Seller with respect to the ownership, possession, purchase, lease, sale, disposition or use of any of the Acquired Assets at any time on or before the Closing Date; and (c) any Tax resulting from the sale of the Acquired Assets to Buyer or otherwise resulting from the transactions contemplated by this Agreement.

## ARTICLE 7
## CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 7.1.    Conditions Precedent to Performance by Seller.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Sale Termination Date, of the following conditions, any one or more of which (other than the condition contained in Section 7.1(c)) may be waived by Seller in its sole discretion:

(a)        Representations and Warranties of Buyer. All representations and warranties made by Buyer in Section 4.2 shall be accurate in all material respects on and as of the Sale Termination Date as if again made by Buyer on and as of such date, except for

9

inaccuracies that do not result in a Material Adverse Effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated on the Sale Termination Date and signed by the president, or equivalent, of Buyer, to that effect.

(b)    Performance of the Obligations of Buyer. Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Sale Termination Date (except with respect to the obligation to pay the Purchase Price in accordance with the terms of this Agreement, which obligation shall be performed in all respects as required under this Agreement), and Seller shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Buyer, to that effect.

(c)    Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order, in form and substance reasonably satisfactory to Buyer and Seller, and no order staying, reversing, modifying, or amending the Sale Order shall be in effect on the Sale Termination Date.

(d)    No Violation of Orders. No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 7.2.    Conditions Precedent to the Performance by Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Sale Termination Date, of the following conditions, any one or more of which (other than the condition contained in Section 7.2(a)) may be waived by Buyer in its sole discretion:

(a)    Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order and such Sale Order shall be a final order on the Closing Date and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Sale Termination Date).

(b)    No Violation of Orders. No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

(c)    Representations and Warranties of Seller. All representations and warranties made by Seller in Section 4.1 shall be accurate in all material respects on and as of the Sale Termination Date as if again made by Seller on and as of such date, except that all representations qualified by materiality shall be true and correct on and as of the Sale Termination Date as if again made by Seller on and as of such date, and Buyer shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Seller, to that effect.

(d)    Performance of the Obligations of Seller. Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Sale Termination Date, and Buyer shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Seller, to that effect.

10

# ARTICLE 8
# TERMINATION

Section 8.1.    Termination. This Agreement may be terminated at any time prior to the Sale Termination Date:

(a)    by either Seller or Buyer if the Closing shall not have occurred by August 31, 2015; provided, however, that the Sale Termination Date may be extended by Seller and Buyer upon mutual agreement;

(b)    by either Seller or Buyer upon the entry of an order of the Bankruptcy Court authorizing the sale of the Acquired Assets to a party other than Buyer ("Competing Transaction"); provided, however, that Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Acquired Assets, in which case Buyer is required to remain bound by the terms of this Agreement until the earlier of (i) closing of the Competing Transaction or (ii) August 31, 2015;

(c)    by Seller if Buyer shall have breached any of its representations, warranties, covenants, or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after Seller gives written notice to Buyer specifying such breach;

(d)    by Buyer if Seller shall have breached any of its representations, warranties, covenants, or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after Buyer gives written notice to Seller specifying such breach; or

(e)    By the mutual written consent of Seller and Buyer..

(f)    Effect of Termination. In the event of termination of this Agreement as provided in this Section 8.1 above, this Agreement shall forthwith become void and there shall be no liability on the part of either party; provided, however, that in the event this Agreement is terminated pursuant to Section 8.1(a) or (c) and Seller is not then in breach of Seller's obligations hereunder, then Seller shall be entitled to retain the Deposit and all interest thereon as liquidated damages and as its sole and exclusive remedy. In the event of termination of this Agreement for any reason other than pursuant to Section 8.1(c), and provided that Buyer is not then in breach of Buyer's obligations hereunder, Buyer shall be entitled to return of the Deposit, without any interest thereon. The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a termination of this Agreement pre-Closing due to a breach of Sellers' obligation hereunder.

# ARTICLE 9
# MISCELLANEOUS

Section 9.1.    Successors and Assigns. Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect; provided, however, that Buyer may

6454406-7

assign this Agreement to an affiliated entity without the consent of Seller provided that Buyer shall remain liable as guarantor of such assignee's obligations hereunder. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

Section 9.2.    <u>Governing Law; Jurisdiction</u>. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Florida (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of any state or federal court located in Miami-Dade County, Florida.

Section 9.3.    <u>Expenses</u>. Except as otherwise provided herein, each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated. Buyer shall pay any fees, costs, and expenses associated with recording an assignment of any of the Acquired Assets.

Section 9.4.    <u>Broker's and Finder's Fees</u>. Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement other than Hilco IP Services, LLC d/b/a Hilco Streambank, whose fees and expenses shall, as between the parties hereto, be the responsibility of Seller and which shall be paid from the proceeds of the Purchase Price, and, insofar as such party knows, no other broker or other Person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 9.5.    <u>Severability</u>. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void, or unenforceable, such provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 9.6.    <u>Notices</u>.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given (i) on the date of service, if served personally on or sent via electronic mail to the party to whom notice is to be given; (ii) on the day after delivery to Federal Express or similar overnight courier or the Express

Mail service maintained by the United States Postal Service; or (iii) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Simply Fashion Stores, Ltd.
Attn: Soneet R. Kapila
1000 South Federal Highway, Suite 200
Ft. Lauderdale, FL 33316
Email: skapila@kapilamukamal.com

With a copy to:

Swapnil Shah
2110 NW 95th Ave
Miami, FL 33172

Additional copy to:

Hilco IP Services, LLC d/b/a Hilco Streambank
Attn: Jack Hazan
1500 Broadway, Suite 810
New York, New York 10036
Email: jhazan@hilcoglobal.com

Additional copy to:

Berger Singerman LLP
Attn: Paul Steven Singerman and Christopher A. Jarvinen
1450 Brickell Ave., Suite 1900
Miami, FL 33131
Email: singerman@bergersingerman.com
        cjarvinen@bergersingerman.com

If to Buyer:


With a copy to:


Additional copy to:


(b)    Any party may change its address for the purpose of this Section 9.6 by giving the other party written notice of its new address in the manner set forth above. Notices hereunder may be given by a party's attorneys.

13

6454406-7

Section 9.7.    Amendments: Waivers. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties, or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation, or warranty of this Agreement.

Section 9.8.    Entire Agreement. This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.9.    Parties in Interest. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer. This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 9.10.    Headings. Interpretation. Gender. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The table of contents and the captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement. All references to "herein" or "hereof or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 9.11.    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

14

# ARTICLE 10
## DEFINITIONS

Section 10.1.  Certain Terms Defined. As used in this Agreement, the following terms have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"Code" means the Internal Revenue Code of 1986, as amended.

"Intellectual Property Rights" means any and all intellectual property rights of whatever nature and in whatever form including all inventions, patents, trademarks, service marks, registered designs, domain names (but not including the domain name SimplyFashion.com), pending applications for any of the foregoing, trade and business names, brand names, unregistered trademarks and service marks, unregistered designs and rights in designs, trade dress, trade secret, formula, copyrights, database rights and rights in software, moral rights, performers rights, know-how, customer, supplier and/or mailing lists and all other intellectual property and proprietary rights including all permits, and all other similar or equivalent industrial, intellectual or commercial rights or property subsisting under the laws of each and every jurisdiction throughout the world whether registered or not, and whether vested, contingent or future, and all divisions, continuations, continuations-in-part, substitutes, reversions, renewals and extensions of any of the foregoing, and all rights under permits, laws or otherwise in relation to any of the foregoing, as well as the rights to sue for past, present, and future infringement of any and all such intellectual property rights.

"IRS" means the Internal Revenue Service.

"Lien" means any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement, other than (a) a lessor's interest in, and any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement on or affecting a lessor's interest in, property underlying any leases; (b) any imperfection of title with respect to any asset that does not materially interfere with the present occupancy of such asset and the continuation of the present occupancy of such asset; and (c) such covenants, conditions, restrictions, easements, encroachments or encumbrances that are not created pursuant to mortgages or other financing or security documents, or any other state of facts, that do not materially interfere with the present occupancy of an asset.

"Material Adverse Effect" means a state of facts, event, change or effect on the value of the Acquired Assets that results in a material adverse effect on the value of the Acquired Assets taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) any action of the Seller pursuant to any order of the Bankruptcy Court entered prior to the date hereof, including, without limitation, orders entered in connection with the sale of the Seller's other assets or the liquidation of Seller's inventory, the

implementation of this Agreement, the transactions contemplated by this Agreement, any ancillary agreements or the announcement thereof; (B) changes or conditions affecting the retail industry generally; (C) changes in economic, regulatory or political conditions generally; (D) changes resulting from, or from any motion, application, pleading or order filed related to, the Seller's Bankruptcy Case; or (E) any act(s) of war or of terrorism.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Subsidiary(ies)" means, when used with respect to any specified Person, any other Person (i) of which the specified Person or any Subsidiary thereof is a general partner, (ii) of which the specified Person or a Subsidiary thereof own at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions for such other Person of which owns the specified person or a Subsidiary thereof, or (iii) that is directly or indirectly controlled by the specified Person or any Subsidiary thereof.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"Taxes" means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any government, which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, worker's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Code) and other obligations of the same or a similar nature, whether arising before, on or after the Closing Date; and "Tax" shall mean any one of them.

[*signature page follows*]

16

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

**BUYER**


By: _____
Name:
Title:


**SELLER**

**SIMPLY FASHION STORES, LTD.**


By: _____
Name:  Soneet R. Kapila
Title:   Chief Restructuring Officer

17

EXHIBIT A

DEBTOR'S WIRE INSTRUCTIONS

6454406-7

**EXHIBIT D**
**PROPOSED NOTICE OF SALE**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                            Chapter 11 Cases

ADINATH CORP. and SIMPLY                          Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                          (Jointly Administered)

      Debtors.

_____/

### <u>NOTICE OF SALE OF INTELLECTUAL PROPERTY</u>

**PLEASE TAKE NOTICE** that in connection with Simply Fashion Stores, Ltd. ("<u>Debtor</u>") *Expedited Motion For An Order (I) Approving The Bidding And Auction Procedures For The Sale Of Intellectual Property, (II) Setting Intellectual Property Sale Hearing Dates, (III) Authorizing And Approving The Sale Of Intellectual Property Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And  (IV) Granting Certain Related Relief* (the "<u>Motion</u>") a hearing (the "<u>Bidding Procedures Hearing</u>") to consider approval of bidding and auction procedures (the "<u>Bidding Procedures</u>") and related relief shall be held before the Honorable Laurel M. Isicoff, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of Florida, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom 8, Miami, FL 33128 (the "<u>Bankruptcy Court</u>") on **July __, 2015 at _____ _.m. (prevailing Eastern Time)** (the "<u>Bidding  Procedures Hearing Date</u>"), or as soon thereafter as counsel may be heard.

---

[1]    The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

PLEASE TAKE FURTHER NOTICE that the Motion seeks, among other things, authority for the Debtor to sell its intellectual property, including, without limitation, the intellectual property identified in **Exhibit "1"** hereto (the "IP").

PLEASE TAKE FURTHER NOTICE that a hearing shall be held to approve the Sales of the IP before the Honorable Laurel M. Isicoff, United States Bankruptcy Judge, at the Bankruptcy Court on **August __, 2015 at ___ a.m./p.m. (prevailing Eastern Time**), or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that objections, if any, by any party to the sale of the IP, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules"), and shall be filed with the Bankruptcy Court so as to be actually received with respect to objections to the Sale of the IP, not later than **August __, 2015 at 4:00 p.m. (prevailing Eastern Time**) by: (i) the Debtors, c/o KapilaMukamal LLP, 1000 South Federal Highway, Suite 200, Fort Lauderdale, FL 33316, Attn: Soneet R. Kapila, CRO; (ii) the Debtors, 2110 N.W. 95th Avenue, Miami, FL 33172, Attn: Swapnil Shah; (iii) counsel to the Debtors, c/o Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Paul Steven Singerman, Esq. and Christopher A. Jarvinen, Esq.; (iv) Hilco IP Services, LLC d/b/a Hilco Streambank, 1500 Broadway, Suite 810, New York, NY 10036, Attn: Jack Hazan and Dmitriy Chemlin; (v) counsel to Hilco, c/o Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Avenue, 23rd Floor, Miami, FL 33131, Attn: Scott L. Baena, Esq., and Jay Sakalo, Esq.; (vi) counsel to JNS INVT, LLC, Genovese, Joblove & Battista, 100 S.E. 2nd Street, Suite 4400, Miami, FL 33131, Attn: Paul Battista, Esq. (vii) counsel to the Official Committee of Unsecured Creditors, Cooley LLP, 1114 Avenue of the Americas, New York, N.Y. 10036-7798, Attn: Jay R. Indyke, Esq. and Richard S. Kanowitz,

Esq. with a copy to GrayRobinson, P.A., 333 S.E. 2nd Avenue, Suite 3200, Miami, FL  33131, Attn. Robert Schatzman, Esq. and Steven J. Solomon, Esq.; and (viii) the U.S. Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33130.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN OBJECTION TO THE SALE OF THE IP LISTED ON EXHIBIT 1, THE DEBTOR WILL BE ABLE TO SELL SUCH IP TO THE WINNING BIDDER.  IN SUCH EVENT, YOU WILL BE FOREVER BARRED FROM OBJECTING TO THE PURCHASE PRICE FOR SUCH IP.**

**PLEASE TAKE FURTHER NOTICE** that this Notice of Sale of Intellectual Property is not binding on the Debtor and/or the any winning bidder and does not constitute the final decision to sell the IP or some portion thereof.

**PLEASE TAKE FURTHER NOTICE** that two business days following the auction, the Debtor shall file on the docket of the Debtor's Bankruptcy Case, make available on its case administration website (http://cases.primeclerk.com/simplyfashuion) and serve on the members of the Official Committee of Unsecured Creditors (the "Committee"), counsel to the Committee, the United States Trustee and every person registered to receive electronic notice in the Debtor's Chapter 11 Case through the Court's CM/ECF system a list of the IP the Debtor seeks to sell at the hearing and the proposed purchaser(s).

Dated: _____, 2015

# **EXHIBIT 1**

## **Schedule of Intellectual Property**

# EXHIBIT E
# PROPOSED SALE ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

ADINATH CORP. and SIMPLY                                  Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                                  (Jointly Administered)

       Debtors.
_____/

**<u>ORDER AUTHORIZING DEBTOR TO ENTER INTO SALE TRANSACTION</u>**

Upon the motion (the "<u>Motion</u>")[2] of Simply Fashion Stores, Ltd., the above-captioned

debtor and debtor in possession (the "<u>Debtor</u>") for an order pursuant to sections 105, 363 and

365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") seeking (i) approval of the bidding and auction

procedures for the sale of intellectual property (the "<u>IP</u>" or "<u>Acquired Assets</u>"), (ii) authority to

---

[1]    The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

[2]    All terms not otherwise defined herein shall have the meanings assigned to them in the Motion.

conduct the sale (the "Sale") of such IP free and clear of all interests, including liens, claims, and encumbrances (collectively, the "Interests")  and (iii) related relief; and upon the record of the hearing for approval of bidding procedures conducted on _____, 2015 and the Court's Order dated _____, 2015 approving bidding and auction procedures (the "Bidding Procedures") in connection with the Debtor's efforts to identify the highest and best bidder in the Sale; and upon the results of the bidding process including the Auction conducted on _____, 2015 reported by the Debtor on or about _____, 2015 [ECF No. _____] (the "Bidding Results"); and upon the record of the hearing held on _____, 2015 (the "IP Sale Hearing"); and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion having been given and it appearing that no other or further notice need be given; heard the objections made to the relief sought in the Motion, if any; and after due deliberation and sufficient cause therefore,

**IT IS FOUND AND DETERMINED THAT:**

A.    Notwithstanding Bankruptcy Rule 6004(h), and to the extent necessary under Bankruptcy Rule 9014 and Fed. R. Civ. P. 54(b), made applicable here by Fed. R. Bankr. P. 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

B.    The statutory predicates for the relief requested in the Motion are §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.

C.      The findings of fact and conclusion of law set forth herein constitute the Court's findings of fact and conclusion of law under Bankruptcy Rule 7052, made applicable here by Bankruptcy Rule 9014.

D.      To the extent any findings of fact set forth herein constitute conclusions of law they are adopted as such. To the extent any conclusions of law set forth herein constitute findings of fact they are adopted as such. Any findings of fact or conclusions of law stated by the Court at the Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

E.      The notice of the Motion and the IP Sale Hearing given by the Debtor constitutes due and sufficient notice thereof, and no other or further notice is necessary. Specifically, the Debtor has complied with all obligations to provide notice of the Auction, IP Sale Hearing and Sale under the Bidding Procedures Order. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

F.      The relief granted herein is in the best interests of the Debtor, its estate, its creditors and other parties in interest.

G.      The Debtor has provided good and sufficient reasons and has demonstrated a compelling and sound business justification for the Court to approve the Sale of the IP identified in **Exhibit 1** hereto to the party (the "Successful  Bidder" or the "Purchaser") on the terms set forth in the Purchase Agreement, outside a chapter 11 plan of reorganization.

H.      The Debtor and its professionals marketed the IP and conducted a sale process as set forth in and in accordance with the Motion.  Based upon the record of these proceedings, all

creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the IP.

I.      As set forth in the Bidding Results, the consideration provided by the Successful Bidder is the highest and best offer received by the Debtor for the IP. No other person or entity, or group of entities, has offered to purchase the Acquired Assets for greater economic value than the Purchaser.

J.      The consideration provided by the Purchaser is (i) fair and reasonable, (ii) will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession.

K.      The Debtor's determination that the Purchaser constitutes the highest and best offer for the IP, a decision made in conjunction with input from the Official Committee of Unsecured Creditors, is a determination made within the scope, and is a reasonable exercise, of the Debtor's business judgment.

L.      The Debtor has demonstrated good, sufficient, and sound business purpose and justification for the Sale of the IP, which is in the best interests of the Debtor, its estate, and its creditors.

M.      The Debtor (i) has full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets by the Debtor has been duly and validly authorized by all necessary corporate action of the Debtor; (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement; and (iii) has taken all corporate action

necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby. No consents or approval are required for the Debtor to consummation of the transactions contemplated by the Purchase Agreement other than approval of this Court and those set forth in the Purchase Agreement. Neither the execution of the Purchase Agreement not the consummation of the transactions contemplated thereby in accordance with its terms will constitute a violation of any provision of the Debtor's organizational documents or any other contract, instrument, law, regulation or ordinance by which the Debtor is bound.

N.    The Debtor is the legal and equitable owner of the Acquired Assets and, upon entry of this Sale Order, it shall have the authority to consummate the transactions contemplated by the Purchase Agreement.

O.    The Purchaser is not an "insider" of the Debtor within the meaning of § 101(31) of the Bankruptcy Code.

P.    The Sale has been undertaken by the Debtor and the Purchaser and their respective representatives at arms' length, without collusion and in "good faith" pursuant to section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of the sale are duly and properly stayed pending such appeal.  The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

Q.    None of the Debtors or the Purchaser has engaged in any conduct that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of

the Bankruptcy Code. The consideration provided by the Purchaser for the IP is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

R.      The transfer of the Acquired Assets to the Purchaser as of the Closing constitutes a legal, valid and binding transfer of the Acquired Assets which vests those Assets in the Purchaser free and clear of all Interests accruing, arising or relating to any time prior to the Closing.

S.      The Purchaser shall have no liability for any liability, any Claim (as defined in section 101(5) of the Bankruptcy Code, or other obligation of or against the Debtor related to the Acquired Assets by reason of the transfer to the Purchaser of the Acquired Assets. The Purchase shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to (i) be a successor to the Debtor, or (ii) have, *de facto* or otherwise, merged with or into the Debtor. The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtor, except as expressly set forth in the Purchase Agreement.

T.      The Debtor is authorized to sell the Acquired Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests against the Debtor, its estate or the Acquired Assets who did not object, or withdrew their objection, to the Sale or the Motion are deemed to have consented under section 363(f)(2) of the Bankruptcy Code. Those holders of Interests against the Debtor, its estate or the Acquired Assets who did object are covered by one or more of the other subsections of 363(f) and are otherwise adequately protected by having their Interests, if any, in each instance against the Debtor, its estate or the Acquired Assets attach to the cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges an Interest in the same order of priority, with the same validity, force and effect

that such creditor had prior to the Sale, subject to any defenses the Debtor and its estate with respect thereto.

U.    All of the provisions of the Purchase Agreement are nonseverable and mutually dependent.

V    The transfer of the Acquired Assets to the Purchaser is "AS IS", "WHERE IS" and "WITH ALL FAULTS," and all warranties of merchantability or fitness for a particular purpose are disclaimed.

W.    The Debtor has advised the Purchase and the Court that the Acquired Assets are or may be subject to the following:

> 1.    Agency Agreement dated April 17, 2015 between Simply Fashion Stores, Ltd., on the one hand, and Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC, on the other hand, approved by Order of this Court dated May 6, 2015 [ECF No. 195], which shall terminate on June 30, 2015.

Based on the foregoing findings of fact and conclusions of law,

**IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is **GRANTED** as set forth herein.

2.    This Court's findings of fact and conclusions of law set forth above, and in the Bidding Procedures Order, are incorporated herein in their entirety.

3.    No appeal, motion to reconsider or similar proceeding has been filed regarding the Bidding Procedures Order which is now a final and non-appealable Order of the Bankruptcy Court, has not been vacated, withdrawn, rescinded or amended, and therefore remains in full force and effect.

4.      All objections with regard to the relief sought in the Motion as it pertains to the Sale of the IP that have not been withdrawn, waived or settled are overruled on the merits for the reasons stated on the record at the IP Sale Hearing, all of which are incorporated herein in their entirety.

5.      Pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized to enter into the Purchase Agreement with the Purchaser.

6.      The consummation of the transaction with respect to the IP contemplated hereunder shall take place on or before the later of (i) two (2) business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under Fed. R. Bankr. P. 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and (ii) the first business day following the termination of the Hilco Merchant Resources, LLC/Gordon Brothers Retail Partners, LLC-Simply Fashion Stores, Ltd. Agency Agreement, but in any event no later than August 31, 2015 (the "Sale Termination Date").

7.      By no later than the Sale Termination Date, the Purchaser shall pay to the Debtor, in cash or otherwise immediately available funds, the consideration amount set forth in **Exhibit 1** less any amounts that the Purchaser deposited with the Debtor pursuant to the Bidding Procedures.

8.      The Successful Bidder shall take the Acquired Assets "AS IS", "WHERE IS" and "WITH ALL FAULTS," without any representations or warranties from the Debtor as to the quality or fitness of the Acquired Assets for either their intended or any other purposes except as specifically set forth in the Purchase Agreement.

9.      Upon the Effective Date, (a) the Debtor is released from any and all claims that any person now holds or may hold arising in any manner out of or in connection with the IP and (b) the Purchaser and the Debtor are granted all necessary and appropriate relief under the Bankruptcy Code (subject to section 362 of the Bankruptcy Code) to implement the transactions contemplated by the Purchase Agreement.

10.      Pursuant to section 363(f) of the Bankruptcy Code, the Sale authorized hereunder shall be free and clear of all Interests, with all such Interests attaching only to the proceeds thereof, in the same order and priority, and with the same validity and enforceability, as existing prior to the Sale, subject to any and all available defenses of the Debtor and its estate.

11.      All parties, including each Purchaser and any governmental agency, shall accept and honor the purchase of the IP in accordance with the Purchase Agreement and this Order.  To the maximum extent permitted under applicable law, Purchaser shall be authorized, as of the Sale Termination Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the IP, and all licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, transferred to the Purchaser as of the Sale termination Date.

12.      This Order shall be effective and enforceable immediately upon entry and shall not be stayed pursuant to Bankruptcy Rules 6004(h) and/or 6006(d).

13.      To the extent that any provisions in the Purchase Agreement conflict with this Order, the Order shall govern.

14.      The Debtor and its estate is authorized to take all actions and execute all documents necessary or appropriate to effectuate the sale of the IP consistent with this Order.

6454406-7                                   33

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.  The Successful Bidder has acknowledged and consented to such jurisdiction, has waived any right to trial by jury in connection with any disputes related to the Sale and is deemed to have submitted itself to the jurisdiction of the Bankruptcy Court.

# # #

Submitted by:
Christopher A. Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340
Email:  cjarvinen@bergersingerman.com

Copies furnished to:
Christopher A. Jarvinen, Esq.
*(Attorney Jarvinen is directed to serve a signed copy of this Order upon all interested parties and to file a Certificate of Service with the Court.)*