UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

ADINATH CORP. and SIMPLY                Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                     (Jointly Administered)

                    Debtors.
_____/

**DEBTOR'S NOTICE OF FILING REVISED, PROPOSED ASSET
PURCHASE AGREEMENT (EXHIBIT "2" TO EXHIBIT "C" TO ECF NO. 396)**

Simply Fashion Stores, Ltd. (the "Debtor"), by and through its undersigned counsel, hereby files the attached revised, proposed Asset Purchase Agreement, which is Exhibit "2" to Exhibit "C" to the *Debtor's Expedited Motion for an Order (I) Approving the Bidding and Auction Procedures for the Sale of Intellectual Property, (II) Setting Lease Sale Hearing Dates, (III) Authorizing and Approving (A) the Sale of Intellectual Property Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (B) Assumption and Assignment of Leases, and (IV) Granting Certain Related Relief* [ECF No. 396].

Dated:  July 20, 2015                          BERGER SINGERMAN LLP
                                                              *Counsel for the Debtors and Debtors in
                                                              Possession*
                                                              1450 Brickell Avenue, Ste. 1900
                                                              Miami, FL  33131
                                                              Telephone:  (305) 755-9500
                                                              Facsimile:  (305) 714-4340

                                                              By:    */s/  Christopher A. Jarvinen*
                                                                       Paul Steven Singerman
                                                                       Florida Bar No. 378860
                                                                       singerman@bergersingerman.com
                                                                       Christopher A. Jarvinen
                                                                       Florida Bar No. 21745
                                                                       cjarvinen@bergersingerman.com

---

[1] The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

**EXHIBIT "2" [REVISED]**
**PURCHASE AGREEMENT**

ASSET PURCHASE AGREEMENT

by and among

Simply Fashion Stores, Ltd.

and

_____

Dated as of _____ ___, 2015

1

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of _____ ___, 2015 (the "Effective Date"), is made by and between Simply Fashion Stores, Ltd., a limited partnership organized under the laws of the state of Alabama (the "Seller"), and _____, an _____ (the "Buyer"). Capitalized terms used in this Agreement are defined or cross-referenced in Article 10.

A.    The Seller and Adinath Corp. each commenced voluntary bankruptcy cases (each a "Bankruptcy Case," and together the "Bankruptcy Cases") under title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Bankruptcy Court") on April 16, 2015 (the "Petition Date"). The Bankruptcy Cases are being jointly administered under Case No. 15-16885-LMI.

B.    Buyer desires to purchase the Acquired Assets and assume the Assumed Liabilities from Seller, and Seller desires to sell, convey, assign, and transfer to Buyer the Acquired Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with §§105 and 363 and other applicable provisions of the Bankruptcy Code.

C.    On _____ ___, 2015, the Bankruptcy Court entered an order (the "Sale Procedures Order"), *inter alia*, approving bidding procedures for the sale of Seller's intellectual property.

D.    The Acquired Assets and Assumed Liabilities are assets and liabilities of Seller, which are to be purchased by the Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to §§ 105, 363, and 365 of the Bankruptcy Code (the "Sale Order"), all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code.

E.    The execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth herein are subject to, among other things, the entry of the Sale Order.

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants, and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, Seller and Buyer hereby agree as follows:

## ARTICLE 1
## PURCHASE AND SALE OF THE ACQUIRED ASSETS

Section 1.1.    Transfer of Acquired Assets. At the Closing, and upon the terms and conditions herein set forth, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of Seller's right, title and interest in, to and under the following property wherever located and whether or not reflected on the Seller's books and records free and clear of all liens, claims and encumbrances (the "Acquired Assets").

1

(a)    all right, title and interest in and to the trademarks, service marks, trade names, service names, brand names, trade dress rights, logos, corporate names, and general intangibles of a like nature, including the names Simply Fashion Stores and any derivatives thereof and any common law rights, owned by Seller including those listed on <u>Schedule 1.1(a)</u> (the "<u>Trademarks</u>") together with the goodwill of any business symbolized thereby and all applications, registrations, and renewals related thereto (subject to Seller's right to the continued use thereof through the Sale Termination Date) and the right to bring any action at law or in equity for the infringement of the Trademarks occurring prior to the Sale Termination Date, including the right to receive any proceeds and damages therefrom;

(b)    all right, title, and interest in the domain names (subject to the proviso below in this subsection (b), Web sites and URLs owned or used by Seller including those listed on Schedule 1.1(b);

(c)    all rights, title and interest in the data relating to customers of the Seller that relate to the Trademarks that are part of the Acquired Assets, including customer phone numbers, ~~and~~ email addresses <u>and customer list(s) (e.g., including names and mailing addresses)</u>;

(d)    all right, title and interest in and to the copyrights owned by Seller including those listed on <u>Schedule 1.1.(d)</u> and all other copyrights owned by Seller, including designs, patterns, specifications, styles, style and pattern books, websites, Facebook pages, Twitter pages, and Instagram and other social media pages as more fully described on Schedule 1.1(d) (the "<u>Copyrights</u>") and the right to bring any action at law or in equity for the infringement of such Copyrights occurring prior to the Closing Date, including the right to receive all proceeds and damages therefrom;

(e)    to the extent not included in Section 1.1 (a-f) above, and to the extent transferable without cost and expense to Seller, all software, telephone numbers, facsimile numbers, email addresses, directory listings, customer and supplier lists, written works, visual works, audio works, multimedia works, web site, idea, concept, patent, method, process, discovery or other intangible asset or Intellectual Property Right of any nature, if any, whether in use, operational, active, under development or design, non-operative or inactive, owned, marketed, maintained, supported, used, licensed or otherwise held for use by, or licensed to or with respect to which rights are granted to, a Person, whether arising under statutory or common law in any jurisdiction or otherwise, and includes the goodwill of Seller's business symbolized by and associated with the foregoing, all applications, registrations, and renewals related thereto and the right to bring any action at law or in equity for the infringement of such Intellectual Property Rights occurring prior to the Closing, including the right to receive all proceeds and damages therefrom.

Section 1.2.    <u>Excluded Assets</u>. The Acquired Assets do not include any assets of Seller not expressly identified in Section 1.1 above as Acquired Assets (all such assets not being acquired by Buyer being herein referred to as the "<u>Excluded Assets</u>").

Section 1.3.    <u>Assumption of Liabilities</u>. At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform, and discharge when due, only the following liabilities of Seller (the "<u>Assumed Liabilities</u>"):

2

(a)     all liabilities of Seller for Transaction Taxes, if any, payable in connection with the transactions contemplated by this Agreement, subject to Section 6.1 of this Agreement;

(b)     the liabilities and obligations arising on or after the Closing Date, relating solely to or arising out of Buyer's ownership and operation of the Acquired Assets; provided, however, that (i) the Assumed Liabilities shall not include liabilities and obligations arising out of the Seller's ownership of the Acquired Assets prior to the Closing Date and (ii) this Section shall not limit the obligations of Seller pursuant to Section 4.1 hereof (and shall be subject thereto).

Section 1.4.     Retention of Liabilities. Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter. All such other liabilities and obligations shall be retained by and remain liabilities and obligations of Seller (all such liabilities and obligations not being assumed being herein referred to as the "Excluded Liabilities").

# ARTICLE 2

## CONSIDERATION

Section 2.1.     Consideration.  The aggregate consideration for the sale and transfer of the Acquired Assets shall be _____ ($_____) (the "Purchase Price"), which price shall be payable and deliverable in accordance with Section 3.3 and the assumption by Buyer of the Assumed Liabilities.

Section 2.2.     Deposit. Concurrently with the execution and delivery of this Agreement, Buyer shall pay to Seller an amount equal to ten percent (10%) of the Purchase Price as a deposit (the "Deposit"). If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with Section 9.2. If the Closing occurs, the Deposit shall be applied (without interest) towards the Purchase Price.

Section 2.3.     363 Sale. Seller has sought approval and entry of the Sale Order pursuant to the motion filed by Seller for entry of the Bid Procedures Order and the Sale Order under Sections 105, 332, and 363 of the Bankruptcy Code. The Sale Order shall be in a form reasonably acceptable to Buyer and Seller. Prior to consideration by the Bankruptcy Court of entry of the Sale Order, Buyer's agreement to purchase the Acquired Assets on the terms set forth herein will be subjected to competitive bids in an auction to be conducted in accordance with the Bid Procedures Order (the "Auction").

# ARTICLE 3
# CLOSING AND DELIVERIES

Section 3.1.     Closing. Absent an agreement by the Debtor to the contrary, the consummation of the transactions contemplated hereby (the "Closing") shall take place the later of (i) such date that is within two (2) business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under Fed. R. Bankr. P. 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and (ii) the first business day following the termination of the Hilco Merchant

Resources, LLC/Gordon Brothers Retail Partners, LLC-Simply Fashion Stores, Ltd. Agency Agreement, but in any event no later than August 31, 2015 (the "Sale Termination Date").

Section 3.2.    Seller's Deliveries. At the Closing, the sale, transfer, assignment and delivery by Seller of the Acquired Assets to Buyer, as herein provided, shall be effected on the Sale Termination Date by quit claim deed, bills of sale, endorsements, assignments and other instruments of transfer and conveyance (including assignments appropriate for recording in the USPTO, as applicable), as well as the electronic transfer of all files and records of Seller relating to the Acquired Assets excluding any representations, warranties or covenants (other than those expressly set forth herein) and shall otherwise be consistent with the terms of this Agreement reasonably satisfactory in form and substance to counsel for Buyer and Seller

Section 3.3.    Buyer's Deliveries. At the Closing:

(a)    At Closing, Buyer shall pay to Seller, by wire transfer of immediately available funds in accordance with instructions provided by the Seller, an amount equal to the Purchase Price; and

(b)    Buyer shall execute and deliver to Seller an instrument of assumption of liabilities with respect to the Assumed Liabilities reasonably satisfactory in form and substance to counsel for Seller and Buyer.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES

Section 4.1.    Representations and Warranties of Seller.  Seller represents and warrants to Buyer as follows:

(a)    Corporate Organization. Seller is a limited partnership duly organized and validly existing under the laws of the State of Alabama. Subject to any necessary authority from the Bankruptcy Court, Seller has all requisite corporate power and authority to own its properties and assets and to consummate the transactions contemplated hereby.

(b)    Authorization and Validity: No Conflict.  Seller has all requisite corporate power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder. Seller's execution and delivery of this Agreement and its performance of its obligations hereunder have been duly authorized by all necessary corporate action of Seller, and no other action on the part of Seller is necessary to authorize such execution, delivery, and performance. This Agreement has been duly executed by Seller and, subject to the Bankruptcy Court's entry of the Sale Order, Seller's obligations hereunder are valid, binding, and enforceable. The execution, delivery, and performance by Seller of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Seller and does not and will not violate any provision of law, or any order applicable to Seller, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract, agreement, policy (including privacy policy) or other obligation to which Seller is a party or by which it is bound or to which any of its properties or assets is subject. The execution,

4

delivery, and performance of this Agreement by Seller does not and will not require the consent or approval of, or filing with, any government or any other Person.

      (c)    <u>Title and Ownership: Condition of Trademarks</u>.

      (i)    Except as set forth on <u>Schedule 4.1(c)</u>. Seller has good title and is the sole and exclusive owner of any and all right, title, and interest in and to the Acquired Assets, including the Trademarks. As of the date hereof, no proceeding is pending (including, without limitation, one initiated by the FTC) or threatened in a writing received by Seller, nor has any claim or demand been made, which challenges or challenged the legality, validity, enforceability, use or exclusive ownership by Seller of any or all of the Acquired Assets, including any Trademark. Subject to the entry of the Sale Order, at the Closing, Seller will have the right to transfer the Acquired Assets to Buyer free and clear of all Liens, restrictions on use or disclosure obligations and will not execute any agreement in conflict therewith. The customer list<u>(s)</u> ~~(email addresses and phone numbers   only)~~ shall be transferred to Buyer by electronic means and shall contain for each customer<u>, if applicable,</u> the email address<u>es,</u> ~~and~~ phone numbers<u>,</u>   ~~only (no~~ names <u>and</u>~~, no~~ mailing addresses~~, and no other personally identifiable information~~), <u>provided, however,</u> Seller makes no representations or warranties with respect to the validity of any email addresses~~, or~~ phone numbers<u>, names or mailing addresses</u> contained in the Acquired Assets.

      (ii)    To Seller's knowledge, none of the Acquired Assets or their respective past or current uses has violated or infringed upon, or is violating or infringing upon, any intangible or Intellectual Property Right of any Person, nor to the Seller's knowledge has any Acquired Asset been violated or infringed upon, or is violating or infringing upon, by any intangible or other Intellectual Property Rights of any Person. Each Trademark within the Acquired Assets is subsisting and in full force and effect and Seller has taken all steps necessary to maintain such Trademarks, including, as applicable, the payment when due of all maintenance and renewal fees and annuities and the filing of all necessary renewals, statements and certifications.

      (iii)    The Seller is the registrant of all internet domain names included within the Acquired Assets, and all registrations of such domain names are in good standing until such dates as set forth on Schedule 4.1(c).

      (d)    <u>Contracts</u>. As of the Sale Termination Date, except as disclosed on Schedule 4.1(c). there are no license agreements or other contracts of whatsoever nature with respect to any of the Acquired Assets.

      (e)    <u>Software</u>. Except as set forth on <u>Schedule 4.1(e)</u> hereto, the Acquired Assets do not include any computer program, operating system, application, firmware or software of any nature other than off-the- shelf software. The Acquired Assets do not include any software licenses or other intangible property. There are no existing and continuing material breaches of the Seller's security procedures and there have been no material attempted or successful unauthorized incidents of access, use, disclosure, modification or destruction of information, data or software or interference with systems operations in all or any portion of the Seller computer systems, including any such breach or incident that requires notice to any Person.

5

Section 4.2.    <u>Representations and Warranties of Buyer</u>. Buyer hereby represents and warrants to Seller as follows:

(a)    <u>Corporate Organization</u>. Buyer is an _____, duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation, and has all requisite power and authority to own its properties and assets.

(b)    <u>Authorization and Validity of Agreement</u>. Buyer has all requisite power and authority to enter into this Agreement and to carry out its obligations hereunder. Buyer's execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action by the board of directors (or equivalent) of Buyer, and no other action on the part of Buyer is necessary to authorize such execution, delivery, and performance. This Agreement has been duly executed by Buyer and Buyer's obligations hereunder are valid, binding, and enforceable.

(c)    <u>No Conflict or Violation</u>. The execution, delivery, and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)    <u>Consents and Approvals</u>. The execution, delivery, and performance of this Agreement does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals, and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e)    <u>Investigation by Buyer</u>. Buyer has conducted its own independent review and analysis of the Acquired Assets and the Assumed Liabilities. Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with Seller's Bankruptcy Case. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in <u>Section 4.1</u> (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, its Affiliates, or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws, or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in

6

Section 4.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3.    Warranties Exclusive. The parties acknowledge that the representations and warranties contained in this Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing, Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING THE BUYER ACKNOWLEDGES THAT SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (IV) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL TRADE COMMISSION LAWS OR OTHER LAWS.

Section 4.4.    Survival of Representations and Warranties. Notwithstanding anything to the contrary herein, none of the representations or warranties of Seller set forth in this Agreement or in any certificate or other document delivered pursuant hereto shall survive the Closing.

## ARTICLE 5
## COVENANTS AND OTHER AGREEMENTS

Section 5.1.    Covenants of Seller.  Seller covenants as follows:

(a)    Further Assurances.  At the request and the sole expense of Buyer, at any time after the Closing Date, Seller shall promptly execute and deliver such documents, and take other acts at no additional expense to Seller, as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement, including but not limited to procuring, maintaining, perfecting, registering, transferring, evidencing and enforcing the full benefits, enjoyment, rights, title and interest, on a worldwide basis of the Acquired Assets.

(b)    Seller shall legally change the name of the Seller within 15 Business Days of Closing and thereafter shall use such changed names in the caption or other pleadings in its Bankruptcy Case; provided, however, that Seller may use its current names for the purposes of conducting, administrating and/or closing the Seller's Bankruptcy Case to the extent necessary to refer to the former names, except that Seller shall not use the former names in the caption of pleadings in the Seller's Bankruptcy Case unless required by the Bankruptcy Code or the Bankruptcy Court.

Section 5.2.    Covenants of Buyer.

6454406-7

(a)    <u>Consents & Approvals</u>. Buyer shall use all commercially reasonable efforts to obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement.

(b)    <u>Further Assurances</u>. Buyer shall take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

Section 5.3.    <u>Bankruptcy Matters</u>. Seller and Buyer shall use commercially reasonable efforts to cooperate, assist, and consult with each other to secure the entry of the Sale Order (in form and substance satisfactory to Buyer and Seller) following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement.

## ARTICLE 6
## TAXES

Section 6.1.    <u>Taxes Related to Purchase of Assets</u>. All federal, state, and local sales, transfer, gains, excise, value-added, or other similar Taxes other than income Taxes of Seller, including, without limitation, all state and local Taxes other than income Taxes of Seller in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, the "<u>Transaction Taxes</u>"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and are not exempt under § 1146(a) of the Bankruptcy Code, shall be paid by Buyer. Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement. Seller at Buyer's expense, agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 6.2.    <u>Cooperation on Tax Matters</u>.

(a)    Buyer and Seller agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other required or optional filings relating to Tax matters, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer to any governmental or regulatory inquiry relating to Tax matters.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and Tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Sale Termination Date and transferred and delivered to Buyer hereunder and (ii) coming into existence after the Sale Termination Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period of at least three years from the Sale Termination Date, and will give Seller notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of

8

them after such period. In addition, from and after the Sale Termination Date, Buyer agrees that it will provide access to Seller and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete any cases under chapter 11 of the Bankruptcy Code of Seller. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 6.3.    Allocation of Purchase Price and Purchase Price Allocation Forms. Buyer and Seller agree to allocate the Purchase Price and the Assumed Liabilities among the Acquired Assets as reasonably determined by the parties (the "Allocation"). Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective Forms 8594 as provided for in Section 1060 of the Code on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed as a result of the transactions contemplated hereby. The Seller and Buyer agree to promptly provide each other with any information necessary to complete such Tax Returns and IRS Forms 8594 (and any corresponding form required to be filed by a state or local taxing authority). The Seller and Buyer shall not take any position on a Tax Return, tax proceeding or audit that is inconsistent with the Allocation except to the extent required otherwise by applicable Law; provided, however, that (i) Buyer's cost for the Acquired Assets may differ from the total amount allocated hereunder to reflect the inclusion in the total cost of items (for example, capitalized acquisition costs) not included in the total amount so allocated and (ii) the amount realized by the Seller may differ from the total amount allocated hereunder to reflect transaction costs that reduce the amount realized for federal income Tax purposes.

Section 6.4.    Tax Payments. Except for Transaction Taxes provided for in Section 6.1, Seller shall be liable for (a) any Tax payable by the Seller with respect to the operation of the business associated with the Acquired Assets on or before the Sale Termination Date; (b) any Tax payable by the Seller with respect to the ownership, possession, purchase, lease, sale, disposition or use of any of the Acquired Assets at any time on or before the Closing Date; and (c) any Tax resulting from the sale of the Acquired Assets to Buyer or otherwise resulting from the transactions contemplated by this Agreement.

## ARTICLE 7
## CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 7.1.    Conditions Precedent to Performance by Seller.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Sale Termination Date, of the following conditions, any one or more of which (other than the condition contained in Section 7.1(c)) may be waived by Seller in its sole discretion:

(a)    Representations and Warranties of Buyer. All representations and warranties made by Buyer in Section 4.2 shall be accurate in all material respects on and as of the Sale Termination Date as if again made by Buyer on and as of such date, except for

9

inaccuracies that do not result in a Material Adverse Effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated on the Sale Termination Date and signed by the president, or equivalent, of Buyer, to that effect.

(b)    <u>Performance of the Obligations of Buyer</u>. Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Sale Termination Date (except with respect to the obligation to pay the Purchase Price in accordance with the terms of this Agreement, which obligation shall be performed in all respects as required under this Agreement), and Seller shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Buyer, to that effect.

(c)    <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order, in form and substance reasonably satisfactory to Buyer and Seller, and no order staying, reversing, modifying, or amending the Sale Order shall be in effect on the Sale Termination Date.

(d)    <u>No Violation of Orders</u>. No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 7.2.    <u>Conditions Precedent to the Performance by Buyer</u>. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Sale Termination Date, of the following conditions, any one or more of which (other than the condition contained in <u>Section 7.2(a)</u>) may be waived by Buyer in its sole discretion:

(a)    <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order and such Sale Order shall be a final order on the Closing Date and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Sale Termination Date).

(b)    <u>No Violation of Orders</u>. No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

(c)    <u>Representations and Warranties of Seller</u>. All representations and warranties made by Seller in <u>Section 4.1</u> shall be accurate in all material respects on and as of the Sale Termination Date as if again made by Seller on and as of such date, except that all representations qualified by materiality shall be true and correct on and as of the Sale Termination Date as if again made by Seller on and as of such date, and Buyer shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Seller, to that effect.

(d)    <u>Performance of the Obligations of Seller</u>. Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Sale Termination Date, and Buyer shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Seller, to that effect.

## ARTICLE 8
## TERMINATION

Section 8.1.    <u>Termination</u>. This Agreement may be terminated at any time prior to the Sale Termination Date:

(a)    by either Seller or Buyer if the Closing shall not have occurred by August 31, 2015; provided, however, that the Sale Termination Date may be extended by Seller and Buyer upon mutual agreement;

(b)    by either Seller or Buyer upon the entry of an order of the Bankruptcy Court authorizing the sale of the Acquired Assets to a party other than Buyer ("<u>Competing Transaction</u>"); provided, however, that Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Acquired Assets, in which case Buyer is required to remain bound by the terms of this Agreement until the earlier of (i) closing of the Competing Transaction or (ii) August 31, 2015;

(c)    by Seller if Buyer shall have breached any of its representations, warranties, covenants, or agreements contained in this Agreement which would give rise to the failure of a condition set forth in <u>Article 7</u>, which breach cannot be or has not been cured within ten (10) Business Days after Seller gives written notice to Buyer specifying such breach;

(d)    by Buyer if Seller shall have breached any of its representations, warranties, covenants, or agreements contained in this Agreement which would give rise to the failure of a condition set forth in <u>Article 7</u>, which breach cannot be or has not been cured within ten (10) Business Days after Buyer gives written notice to Seller specifying such breach; or

(e)    By the mutual written consent of Seller and Buyer..

(f)    <u>Effect of Termination</u>. In the event of termination of this Agreement as provided in this <u>Section 8.1</u> above, this Agreement shall forthwith become void and there shall be no liability on the part of either party; provided, however, that in the event this Agreement is terminated pursuant to <u>Section 8.1(a) or (c)</u> and Seller is not then in breach of Seller's obligations hereunder, then Seller shall be entitled to retain the Deposit and all interest thereon as liquidated damages and as its sole and exclusive remedy. In the event of termination of this Agreement for any reason other than pursuant to <u>Section 8.1(c)</u>, and provided that Buyer is not then in breach of Buyer's obligations hereunder, Buyer shall be entitled to return of the Deposit, without any interest thereon. The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a termination of this Agreement pre-Closing due to a breach of Sellers' obligation hereunder.

## ARTICLE 9
## MISCELLANEOUS

Section 9.1.    <u>Successors and Assigns</u>. Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect; provided, however, that Buyer may

11

assign this Agreement to an affiliated entity without the consent of Seller provided that Buyer shall remain liable as guarantor of such assignee's obligations hereunder. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

Section 9.2.    <u>Governing Law; Jurisdiction</u>. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Florida (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of any state or federal court located in Miami-Dade County, Florida.

Section 9.3.    <u>Expenses</u>. Except as otherwise provided herein, each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated. Buyer shall pay any fees, costs, and expenses associated with recording an assignment of any of the Acquired Assets.

Section 9.4.    <u>Broker's and Finder's Fees</u>. Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement other than Hilco IP Services, LLC d/b/a Hilco Streambank, whose fees and expenses shall, as between the parties hereto, be the responsibility of Seller and which shall be paid from the proceeds of the Purchase Price, and, insofar as such party knows, no other broker or other Person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 9.5.    <u>Severability</u>. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void, or unenforceable, such provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 9.6.    <u>Notices</u>.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given (i) on the date of service, if served personally on or sent via electronic mail to the party to whom notice is to be given; (ii) on the day after delivery to Federal Express or similar overnight courier or the Express

Mail service maintained by the United States Postal Service; or (iii) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

      Simply Fashion Stores, Ltd.
      <u>Attn</u>: Soneet R. Kapila
      1000 South Federal Highway, Suite 200
      Ft. Lauderdale, FL 33316
      Email: skapila@kapilamukamal.com

With a copy to:

      Swapnil Shah
      2110 NW 95th Ave
      Miami, FL 33172

Additional copy to:

      Hilco IP Services, LLC d/b/a Hilco Streambank
      <u>Attn</u>: Jack Hazan
      1500 Broadway, Suite 810
      New York, New York 10036
      Email: jhazan@hilcoglobal.com

Additional copy to:

      Berger Singerman LLP
      <u>Attn</u>: Paul Steven Singerman and Christopher A. Jarvinen
      1450 Brickell Ave., Suite 1900
      Miami, FL 33131
      Email: singerman@bergersingerman.com
              cjarvinen@bergersingerman.com

If to Buyer:

With a copy to:

Additional copy to:

      (b)    Any party may change its address for the purpose of this <u>Section 9.6</u> by giving the other party written notice of its new address in the manner set forth above. Notices hereunder may be given by a party's attorneys.

6454406-7

Section 9.7.    Amendments: Waivers. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties, or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation, or warranty of this Agreement.

Section 9.8.    Entire Agreement. This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.9.    Parties in Interest. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer. This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 9.10.    Headings. Interpretation. Gender. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The table of contents and the captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement. All references to "herein" or "hereof or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 9.11.    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

# ARTICLE 10
## DEFINITIONS

Section 10.1.  <u>Certain Terms Defined</u>. As used in this Agreement, the following terms have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"Code" means the Internal Revenue Code of 1986, as amended.

"Intellectual Property Rights" means any and all intellectual property rights of whatever nature and in whatever form including all inventions, patents, trademarks, service marks, registered designs, domain names (but not including the domain name SimplyFashion.com), pending applications for any of the foregoing, trade and business names, brand names, unregistered trademarks and service marks, unregistered designs and rights in designs, trade dress, trade secret, formula, copyrights, database rights and rights in software, moral rights, performers rights, know-how, customer, supplier and/or mailing lists and all other intellectual property and proprietary rights including all permits, and all other similar or equivalent industrial, intellectual or commercial rights or property subsisting under the laws of each and every jurisdiction throughout the world whether registered or not, and whether vested, contingent or future, and all divisions, continuations, continuations-in-part, substitutes, reversions, renewals and extensions of any of the foregoing, and all rights under permits, laws or otherwise in relation to any of the foregoing, as well as the rights to sue for past, present, and future infringement of any and all such intellectual property rights.

"IRS" means the Internal Revenue Service.

"Lien" means any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement, other than (a) a lessor's interest in, and any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement on or affecting a lessor's interest in, property underlying any leases; (b) any imperfection of title with respect to any asset that does not materially interfere with the present occupancy of such asset and the continuation of the present occupancy of such asset; and (c) such covenants, conditions, restrictions, easements, encroachments or encumbrances that are not created pursuant to mortgages or other financing or security documents, or any other state of facts, that do not materially interfere with the present occupancy of an asset.

"Material Adverse Effect" means a state of facts, event, change or effect on the value of the Acquired Assets that results in a material adverse effect on the value of the Acquired Assets taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) any action of the Seller pursuant to any order of the Bankruptcy Court entered prior to the date hereof, including, without limitation, orders entered in connection with the sale of the Seller's other assets or the liquidation of Seller's inventory, the

15

implementation of this Agreement, the transactions contemplated by this Agreement, any ancillary agreements or the announcement thereof; (B) changes or conditions affecting the retail industry generally; (C) changes in economic, regulatory or political conditions generally; (D) changes resulting from, or from any motion, application, pleading or order filed related to, the Seller's Bankruptcy Case; or (E) any act(s) of war or of terrorism.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Subsidiary(ies)" means, when used with respect to any specified Person, any other Person (i) of which the specified Person or any Subsidiary thereof is a general partner, (ii) of which the specified Person or a Subsidiary thereof own at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions for such other Person of which owns the specified person or a Subsidiary thereof, or (iii) that is directly or indirectly controlled by the specified Person or any Subsidiary thereof.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"Taxes" means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any government, which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, worker's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Code) and other obligations of the same or a similar nature, whether arising before, on or after the Closing Date; and "Tax" shall mean any one of them.

[*signature page follows*]

16

6454406-7

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

**BUYER**


By: _____
Name:
Title:


**SELLER**

**SIMPLY FASHION STORES, LTD.**


By: _____
Name:  Soneet R. Kapila
Title:   Chief Restructuring Officer