

**ORDERED in the Southern District of Florida on July 24, 2015.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

ADINATH CORP. and SIMPLY                  Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                      (Jointly Administered)

      Debtors.

_____/


**ORDER (I) APPROVING BIDDING AND AUCTION
PROCEDURES FOR SALE OF INTELLECTUAL PROPERTY, AND
(II) SETTING SALE HEARING DATE AND OBJECTION DEADLINES**

      **THIS MATTER** came before the Court on the 21st day of July, 2015 at 10:00 a.m. in

Miami, Florida, upon the motion dated July 10, 2015 [ECF No. 396] (the "Motion"), of the

debtor and debtor in possession, Simply Fashion Stores, Ltd. ("Simply Fashion" or "Debtor"),

---

[1] The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) approving the bidding and auction procedures attached hereto as **Exhibit "A"** (the "Bidding Procedures") for the sale of the Debtor's intellectual property (the "IP"), (ii) setting dates for the sale hearing (the "Sale Hearing"), and (iii) authorizing and approving (a) the sale (the "Sales") of the IP[2], free and clear of all interests, including liens, claims, and encumbrances, (b) the assumption and assignment of IP, and (c) granting related relief; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C.§ 157; and adequate notice of the Motion having been given and it appearing that no other of further notice need be given; and upon the arguments made at the hearing held on July 21, 2015 (the "Hearing"), and having heard the objections made to the relief sought in the Motion; and after due deliberation and sufficient cause therefore,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     The relief granted herein is in the best interests of the Debtor, its estate, its creditors and other parties in interest.

B.     The notice of the Motion and the Hearing given by the Debtor constitutes due and sufficient notice thereof.

C.     The Debtor, through its Chief Restructuring Officer has provided good and sufficient reasons and has demonstrated a compelling and sound business justification for the

---

[2]     All terms not otherwise defined herein shall have the meanings assigned to them in the Motion.

2

Court to:  (1) approve the Bidding Procedures in the form annexed hereto as **Exhibit "A"** and (2) set the date for IP Sale Hearing and corresponding objection deadlines.

  D.  The Bid Procedures are reasonable and appropriate, and represent the best method of maximizing the realizable value of the Debtor's IP.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

  1.  The Motion is granted to the extent provided herein.

  2.  All objections filed in response to the relief granted herein, to the extent not resolved as set forth herein or at the Hearing, are overruled.

  3.  The Bidding Procedures are approved and the Debtor is authorized to solicit bids for the IP and to conduct the Auction in the manner set forth in the Bidding Procedures.

  4.  The Sale(s) of any "personally identifiable information" (as that term is defined in section 101(41A) of the Bankruptcy Code) will be subject to the findings and recommendations (collectively, the "Findings and Recommendations") contained in any oral or written report submitted by the consumer privacy ombudsperson, and the Debtors and other interested parties reserve the right to contest such Findings and Recommendations.

  5.  The hearing to consider approval of the Sales of the IP shall be held on **August 11, 2015 at 10:30 a.m. (prevailing Eastern Time), at the United States Bankruptcy Court, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom 8, Miami, FL 33128.**

  6.  Objections, if any, to the Sales shall be made in writing, shall state with particularity the grounds therefore, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules"), and shall be filed with the Bankruptcy so as to be actually received no later than **August 10, 2015 at**

3

**4:00 p.m. (prevailing Eastern Time**) (the "Objection Deadline") by: (i) the Debtor, c/o KapilaMukamal LLP, 1000 South Federal Highway, Suite 200, Fort Lauderdale, FL 33316, Attn: Soneet R. Kapila, CRO; (ii) the Debtor, 2110 N.W. 95th Avenue, Miami, FL 33172, Attn: Swapnil Shah; (iii) counsel to the Debtor, c/o Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Paul Steven Singerman, Esq. and Christopher A. Jarvinen, Esq.; (iv) Hilco IP Services, LLC d/b/a Hilco Streambank, 1500 Broadway, Suite 810, New York, NY 10036, Attn: Jack Hazan and Dmitriy Chemlin; (v) counsel to Hilco, c/o Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Avenue, 23rd Floor, Miami, FL  33131, Attn: Scott L. Baena, Esq. and Jay Sakalo, Esq.; (vi) counsel to JNS INVT, LLC, c/o Genovese, Joblove & Battista, 100 S.E. 2nd Street, Suite 4400, Miami, FL  33131, Attn: Paul Battista, Esq., (vii) counsel to the Official Committee of Unsecured Creditors, c/o Cooley LLP, 1114 Avenue of the Americas, New York, N.Y. 10036-7798, Attn: Jay R. Indyke, Esq. and Richard S. Kanowitz, Esq., with a copy to GrayRobinson, P.A., 333 S.E. 2nd Avenue, Suite 3200, Miami, FL  33131, Attn. Robert Schatzman, Esq. and Steven J. Solomon, Esq.; and (viii) the U.S. Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33130.

7.      Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry hereof and this Order shall be immediately effective and enforceable upon its entry.

8.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

# # #

Submitted by:
Christopher A. Jarvinen, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: cjarvinen@bergersingerman.com

Copies furnished to:
Christopher A. Jarvinen, Esq.
*(Attorney Jarvinen is directed to serve a signed copy of this Order upon all interested parties and to file a Certificate of Service with the Court.)*

**EXHIBIT "A"**
**BIDDING PROCEDURES**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11 Cases

ADINATH CORP. and SIMPLY                            Case No. 15-16885-LMI
FASHION STORES, LTD.,[1]                            (Jointly Administered)

       Debtors.

_____/

## INTELLECTUAL PROPERTY SALE BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sales (the "Sales") of the interests held by Simply Fashion Stores, Ltd. (the "Debtor") in its intellectual property.

1.      On July 10, 2015, the Debtor filed its *Motion For An Order (I) Approving The Bidding And Auction Procedures For The Sale Of Intellectual Property , (II) Setting Intellectual Property Sale Hearing Dates, (III) Authorizing And Approving The Sale Of Intellectual Property Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (IV) Granting Certain Related Relief* [ECF No. 396] (the "IP Sale Motion").

2.      On July __, 2015, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an Order approving these Bidding Procedures and approving auction procedures for the Sales [ECF No. __] (the "Bidding Procedures Order"). The Bidding Procedures Order scheduled **August 11, 2015 at 10:30 a.m.** (or such later date as

---

[1]    The Debtors in these cases, along with the addresses and last four digits of each Debtor's federal tax identification number are: (i) Adinath Corp., 2110 N.W. 95th Avenue, Miami FL 33172 (4843); and (ii) Simply Fashion Stores, Ltd., 2500 Crestwood Boulevard, Birmingham, AL 35210 (6230).

may be determined by the Bankruptcy Court), as the date when the Bankruptcy Court will conduct the hearing ("IP Sale Hearing") to authorize the Debtor to conduct the Sales.

3.    The Bidding Procedures set forth herein describe, among other things, the assets available for the Sales, the manner in which bids become Qualified Bids (as defined herein), the receipt and negotiation of bids received, the conduct of any subsequent Auctions (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof. In the event that the Debtor and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

4.    The assets proposed to be sold in the Sales are the Debtor's interests in the intellectual property identified in **Exhibit "1"** hereto.

## "As Is, Where Is"

5.    Any sale, assignment, or other disposition of each of the IP or any portion thereof will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or its estate.

## Free Of Any And All Interests

6.    The Debtor shall request language in any Order approving the Sales providing that all of the Debtor's rights, title and interest in and to the IP or any portion thereof shall be sold pursuant to section 363(f) of title 11 of the United States Code (the "Bankruptcy Code") free and clear of all interests, including, without limitation, liens, claims, encumbrances, mortgages, and security interests, which shall attach to the net proceeds received by the Debtor as a result of the Sales with the same force and effect that they now have, subject to the Debtor's claims and defenses and any further Order of the Bankruptcy Court.

6553836-1

**Due Diligence**

7.     Each Qualified Bidder (as defined herein) shall be deemed to acknowledge: (a) that it had an opportunity to inspect and examine the IP or any portion thereof and to review all pertinent documents with respect to the IP or any portion thereof  prior to making its offer and that each such Qualified Bidder relied solely on that review and upon its own investigation and inspection of the IP or any portion thereof in making its offer, (b) that it is not relying upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise of the Debtor, its agents or representatives; and (c) that the occupancy of the premises set forth in the Leases may not be available until the completion of any going out of business sale at the premises.

**Bid Deadline**

8.     A bidder (the "Bidder" and collectively, the "Bidders") who desires to make a bid for some or all of the IP must deliver the Required Bid Documents (as defined herein) as follows:

>          (i)     Bids must be delivered so as to be received not later than **11:59 p.m. (ET) on August 6, 2015** (the "Bid Deadline) to: (i) the Debtor, c/o KapilaMukamal LLP, 1000 South Federal Highway, Suite 200, Fort Lauderdale, FL 33316, Attn: Soneet R. Kapila, CRO; (ii) the Debtor, 2110 N.W. 95th Avenue, Miami, FL 33172, Attn: Swapnil Shah; (iii) counsel to the Debtor, c/o Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Paul Steven Singerman, Esq. and Christopher A. Jarvinen, Esq.; (iv) Hilco IP Services, LLC d/b/a Hilco Streambank, 1500 Broadway, Suite 810, New York, NY 10036, Attn: Jack Hazan and Dmitriy Chemlin; (v) counsel to Hilco, c/o Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Avenue, 23rd Floor, Miami, FL 33131, Attn: Scott L. Baena, Esq., and Jay Sakalo, Esq.; (vi) counsel JNS INVT, LLC, Genovese, Joblove & Battista, 100 S.E. 2nd Street, Suite 4400, Miami, FL 33131, Attn: Paul Battista, Esq.; (vii) counsel to the Official Committee of

3

Unsecured Creditors, c/o Cooley LLP, 1114 Avenue of the Americas, New York, N.Y. 10036-7798, Attn: Jay R. Indyke, Esq. and Richard S. Kanowitz, Esq. with a copy to GrayRobinson, P.A., 333 S.E. 2nd Avenue, Suite 3200, Miami, FL 33131, Attn. Robert Schatzman, Esq. and Steven J. Solomon, Esq.; and (viii) the U.S. Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33130.

(ii)    The Debtor, in consultation with the Committee, may extend the Bid Deadlines once or successively, but are not obligated to do so.

## **Bid Requirements**

9.    All bids must include the following documents (the "Required Bid Documents"):

a.    A written offer on Bidder' s corporate letterhead (or, if on behalf of Bidder by Bidder's legal counsel, then on Bidder's legal counsel's letterhead) for the purchase of the IP or any portion thereof must include: (i) the full name and identity of the proposed purchaser (and any beneficial owner thereof if the purchaser is not a publicly traded entity) of each portion of the IP, (ii) the amount being offered for some or all of the IP (if more than one portion of the IP, then set forth in the form of an allocation schedule), and (iii) the intended use of the IP in Bidder's offer. Such written offer must also expressly state that if Bidder is the successful Bidder, it is ready, willing, and able to execute a purchase agreement substantially in the form attached hereto as **Exhibit "2"**.

b.    A good faith deposit equal to 10% of the bid amount for the IP that is the subject of such bid (the "Good Faith Deposit") in immediately available funds, i.e., a wire transfer or a certified bank check from a U.S. bank payable to the order of Simply Fashion Stores, Ltd. (or such other party as the Debtor may determine).

c.    All written offers must expressly state that the Bidder's offer is (and all offers will be considered to be) irrevocable until the earlier to occur of (i) the Closing (as defined herein) or (ii) thirty (30) days following the Auction (unless such bid is sooner expressly rejected in writing by the Debtors).

## **Qualified Bids**

10.    A Bid will be considered only if the Bid:

a.    proposes, for the IP or some portion thereof that is the subject of such Bid, consideration, which sum shall be paid in immediately available funds;

b.    is unconditional, subject only to the Debtor obtaining any necessary approval or authorization from the Bankruptcy Court;

c.    includes a commitment to consummate the purchase of the IP or any portion thereof on or within two business days following the later of (i) the IP Sale

4

Hearing or (u) the Sale Termination Date (as defined in the Sale Motion) with respect to such Lease;

    d.    is received by the Bid Deadline; and

    e.    agrees to waive any right to assert a claim for reimbursement of any fees and/or expenses of such bidder as an administrative expense, or otherwise, including, without limitation, as a substantial contribution; and

11.    In addition, to be a Qualified Bid, each Bidder must be prepared to demonstrate to the Debtor its ability to consummate the purchase of the IP or any portion thereof.

12.    A Bid will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements, including those in Paragraphs 10 and 11 (a "Qualified Bid"); provided, however, the Debtor will have the right, in consultation with the Committee, to entertain bids for the IP or some portion thereof do not conform to one or more of the requirements specified herein and may deem such bids to be Qualified Bids. A bidder from whom the Debtor receive a Qualified Bid will be designated a "Qualified Bidder".

13.    The IP or some portion thereof and other pertinent documents will be available for inspection prior to the Bid Deadline, through a portal to be made available to interested bidders that have executed a non-disclosure agreement.

### Joint Bids

14.    The Debtor will be authorized to approve joint bids in the Debtor's discretion, after consulting with the Committee, on a case-by-case basis.

### Auctions

15.    If the Debtor receives more than one Qualified Bid for the IP or some portion thereof, the Debtor will conduct a live auction, telephonic auction or request the bidders submit "best and final bid" for such IP at **10:00 a.m. (ET) on August 10, 2015**, or such later time or other place as the Debtor may notify all Qualified Bidders who have submitted Qualified Bids.

16.     The Auction will be conducted in accordance with the following procedures:

a.      Only the Debtor, members of the statutory committee of unsecured creditors (the "Committee"), and any Qualified Bidders who have timely submitted Qualified Bids for the IP or some portion thereof which are subject to the Auction will be entitled to attend any telephonic Auction. Only Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

b.      Immediately prior to the commencement of the Auction for the IP or some portion thereof, with respect to the Qualified Bid or combination of Qualified Bids which the Debtor determine to be the highest or otherwise best offer for the IP or some portion thereof subject to that Auction, the Debtor will provide information as to the identity of such Qualified Bidder(s) and the purchase price associated with such Qualified Bid(s) to all Qualified Bidders for the IP or some portion thereof who have informed the Debtor of their intent to participate in the Auction. Notwithstanding such determination, the Debtor reserves the right, in consultation with the Committee, to determine which bid, or subsequent bid, is the Successful Bid (as defined herein), following the conclusion of the Auction based upon a number of factors and other considerations.

c.      In the event the Debtor receives only a single Qualified Bid for a the IP or some portion thereof, such IP will not be subject to bidding at the Auction, and the Debtor, in consultation with the Committee, may seek to assume and assign such IP or to enter into a termination agreement at the IP Sale Hearing following the Auction, if such Qualified Bid is otherwise acceptable to the Debtor. In the event the Debtor receives multiple Qualified Bids for the IP or some portion thereof, such IP, unless previously sold, otherwise disposed of or withdrawn, will be offered for sale at the Auction, either in bulk or separately.

d.      All bidding shall be in increments determined by the Debtor and its advisors, after consultation with the Committee.

e.      All Qualified Bidders who have timely submitted Qualified Bids will be entitled to attend any telephonic auction for all subsequent bids with the understanding that the identity of each bidder and the purchase price of each subsequent bid will be fully disclosed to all other applicable bidders throughout the entire Auction and put on the record.

f.      The Debtor, in consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction (i.e., the amount of time allotted to make subsequent bids), provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the local rules issued by the United States Bankruptcy Court for the Southern District of Florida (the "Local Bankruptcy Rules") or any order of the Bankruptcy Court entered in connection herewith.

g.      The Debtor intends to sell its interest to the Bidder making the highest or otherwise best Qualified Bid at or prior to the Auction for the IP or some portion thereof. Formal acceptance of a bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the Sales of the IP or some portion thereof to such Bidder or its designated assignee and, as applicable, the assumption and assignment or entry into termination agreements for such IP.

**Jurisdiction**

17.     Each Bidder, by submitting a bid, is deemed to have submitted itself to the jurisdiction of the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction over any disputes arising out of or related to the Bidding Procedures, and each Bidder, by submitting the bid, has acknowledged and consented to such jurisdiction and has waived any right to trial by jury in connection with any disputes related to Debtor's qualification of Bids, the Auction and the construction and enforcement of these Bidding Procedures.

**Selection of Successful Bid**

18.     At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Debtor, after consultation with its advisors and the Committee, will announce for the IP or some portion thereof which bid is the highest or otherwise best bid (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)") and which bid is the second highest or otherwise best bid, if any (the "Back-Up Bid(s)" and such bidder(s), the "Back-Up Bidder(s)"). Within one business day of the Debtor's announcement of a Successful Bidder, such bidder shall supplement its Good Faith Deposit in an amount equal to the difference between (x) 10% of the Successful Bid and (y) the Good Faith Deposit previously provided by the bidder with respect to it applicable Bid.

19.     The Debtor will sell the IP or some portion thereof to the Successful Bidder(s) upon the approval of such Successful Bid(s) by the Bankruptcy Court at the IP Sale Hearing. The Debtor's presentation of a particular Successful Bid to the Court for approval does not constitute

7

the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the IP Sale Hearing.

### Consultation

20.    The Debtor will consult with the Committee on an ongoing basis throughout the sale and auction process.

### The IP Sale Hearings

21.    The IP Sale Hearings will be held before the Honorable Laurel M. Isicoff **on August 11, 2015 at 10:30 a.m. (ET)** in the United States Bankruptcy Court for the Southern District of Florida, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom 8, Miami, FL 33128, but may be adjourned or rescheduled by Debtor, in consultation with the Committee, subject to Bankruptcy Court approval, as necessary, without further notice by an announcement of the adjourned date at the Lease Sale Hearing.

22.    If the Debtor does not receive any Qualified Bids the Debtor will report the same to the Bankruptcy Court at the IP Sale Hearing on **August 11, 2015**, and may proceed with the abandonment of the IP under 11 U.S.C. § 554(a) and Local Rule 6007-1.

23.    If the Debtor receives one or more Qualified Bids for the IP or some portion thereof, then, at the IP Sale Hearing on **August 11, 2015**, the Debtor will seek approval of the Successful Bid for such IP, and, at the Debtor's election, the Back-Up Bid, as well as the Sales and, as applicable, assumption and assignment of such IP or entry into termination agreements for such IP.

### The Closing

24.    Except as otherwise provided in a written offer that has been accepted by the Debtor, upon approval of the Sales and entry into a purchase agreement for such IP with the Successful Bidder by the Bankruptcy Court, the closing (the "Closing") of the Sales of the IP or

8

some portion thereof shall take place on or within two (2) business days following the later of (i) such date that is within two (2) business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under FRBP 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and (ii) the Sale Termination Date. With respect to the Closing, time of performance by the Successful Bidder is of the essence.

25.    Following approval of the Sales to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to timely consummate the Sales because of a breach or failure to perform on the part of such Successful Bidder(s), except for a failure of a condition precedent beyond the control of either the Debtor or the Successful Bidder, then the Debtor shall retain the Good Faith Deposit as liquidated damages and the Back-Up Bid(s) will be deemed to be the Successful Bid(s) and the Debtor, in consultation with the Committee, will be authorized, but not directed, to effectuate a Sale to the Back-Up Bidder(s) subject to the terms of such Back-Up Bid without further order of the Bankruptcy Court.

26.    At the Closing, the balance of the purchase price shall be paid by the Successful Bidder (or, as applicable, the Back-Up Bidder) by wire transfer or an endorsed bank or certified check.

## Return of Good Faith Deposits

27.    The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder and, at the Debtor's election, the Back-Up Bidder) for the IP or some portion thereof will be held by the Debtor and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until the earlier of (i) two (2) business days following the Closing of the Sale

9

and (ii) thirty (30) days following the applicable Auction (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), will be applied against the payment of the purchase price upon Closing of the Sale to the Successful Bidder(s). If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to timely consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtor will not have any obligation to return the Good Faith Deposit, and such Good Faith Deposit will irrevocably become property of the Debtor's estate. On the Return Date, the Debtor will return the Good Faith Deposits of all other Qualified Bidders for Leases, together with the accrued interest thereon.

## Reservations Of Rights

28.     The Debtor, in consultation with the Committee: (i) may determine which Qualified Bid, if any, is the highest or otherwise best bid, (ii) may reject at any time any bid that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or these Bidding Procedures, or (c) contrary to the best interests of the Debtor, its estate and creditors as determined by the Debtor in its sole discretion, and (iii) remove any portion of the IP from the Auction and sell directly to a proposed purchaser.  The Debtor will have no obligation to accept or submit for Court approval any offer presented at the Auction except such written offers as may have been accepted by the Debtor, in consultation with the Committee

6553836-1

## **Miscellaneous Terms of Sale**

29.     Unless otherwise indicated by the Debtor at the Auction, Sales of the IP or some portion thereof shall not include personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located in the premises currently leased or owned by the Debtor.

30.     All sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of personal property of the Debtor in connection therewith shall be the sole responsibility of the Successful Bidder and shall be paid to the Debtor at the Closing of each transaction.

31.     The Debtor, in consultation with the Committee, at or before each Auction, may impose or modify the terms and conditions herein as they determine to be in the best interests of the Debtor, its estate, creditors and other parties in interest. The Debtor, in consultation with the Committee, may revise the procedures herein without Court approval to enable Qualified Bidders to submit Qualified Bids for smaller subsets of the IP of a greater package submitted by such Qualified Bidders, provided no IP is included in such package.

*  *  *

11

**EXHIBIT "1"**
**INTELLECTUAL PROPERTY**

# SCHEDULE OF INTELLECTUAL PROPERTY
## Schedule 1.1(a)
## Trademarks

All trademarks owned by Simply Fashion Stores, Ltd. to include but not limited to:

**Trademark Schedule**[4]

| Trademark | Status in Trademark Office | Reg. No. | Serial No. | Reg. Date | Status |
|---|---|---|---|---|---|
| Fashion Trend | Registered | 3126370 | 78686808 | 8/6/2006 | Live |
| B.F.Y. Boots For You | Registered | 2748500 | 76382645 | 8/5/2003 | Live |
| Jamie Nicole | Registered | 2362388 | 75801295 | 6/27/2000 | Live |
| Simply Plus | Registered | 1939989 | 74619658 | 12/5/1995 | Live |
| Simply Fashion | Registered | 2007442 | 74574096 | 10/15/1996 | Live |
| Simply 6 | Registered | 1572593 | 73789691 | 12/19/1989 | Live |
| Simply | Registered | 1532425 | 73744253 | 3/28/1989 | Live |
| Erica Brooke | Registered | 2362387 | 75801078 | 6/27/2000 | Live |

---

[4]    The Trademarks listed in this Schedule 1.1(a) represents, to the best of the Debtor's knowledge, all of the Debtor's Trademarks, but to the extent that the Debtor becomes aware of additional Trademarks it reserves the right to file supplemental, revised schedules in advance of the Bid Deadline and include those additional Trademarks in the sale process.

13

**SCHEDULE OF INTELLECTUAL PROPERTY**
**Schedule 1.1(b)**
**Domain Names**

All domain names owned by Simply Fashion Stores, Ltd. to include but not limited to:

**Domain Name Schedule[5]**

| **Domain Name** | **Expiry Date** |
|---|---|
| SFDDNS.COM | 3/7/2018 |
| SFDDNE.NET | 3/7/2018 |
| SFMIS.NET | 3/7/2018 |
| SHOPFASHIONTREND.COM | 7/13/2020 |
| SHOPFASHIONTRENDS.COM | 7/13/2020 |
| SIMPLY6.COM | 7/13/2020 |
| SIMPLYFASHION.COM | 7/13/2020 |
| SIMPLYFASHIONCLOTHINGSTORE.COM | 7/13/2020 |
| SIMPLYFASHIONS.COM | 7/13/2020 |
| SIMPLYFASHIONSSTORES.COM | 7/13/2020 |
| SIMPLYFASHIONSTORE.COM | 7/13/2020 |
| SIMPLYFASHIONSSTORES.COM | 7/13/2020 |
| SIMPLYFASHION.INFO | 10/21/2021 |
| SIMPLYFASHIONAPPAREL.COM | 7/24/2022 |
| SIMPLYFASHIONAPPAREL.INFO | 7/25/2022 |

---

[5]   The Trademarks listed in this Schedule 1.1(b) represents, to the best of the Debtor's knowledge, all of the Debtor's Domain Names, but to the extent that the Debtor becomes aware of additional Domain Names it reserves the right to file supplemental, revised schedules in advance of the Bid Deadline and include those additional Domain Names in the sale process.

14

**Exhibit A**
**Schedule 4.1(c)**

Seller has advised Buyer that the Acquired Assets are or may be subject of the following:

Agency Agreement dated April 17, 2015 between Simply Fashion Stores, Ltd., on the one hand, and Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC, on the other hand, approved by Order of this Court dated May 6, 2015 [ECF No. 195], which shall terminate on June 30, 2015.

15

**EXHIBIT "2"**
**PURCHASE AGREEMENT**

ASSET PURCHASE AGREEMENT

by and among

Simply Fashion Stores, Ltd.

and

_____

Dated as of _____ \_\_\_, 2015

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of _____ ___, 2015 (the "Effective Date"), is made by and between Simply Fashion Stores, Ltd., a limited partnership organized under the laws of the state of Alabama (the "Seller"), and _____, an _____ (the "Buyer"). Capitalized terms used in this Agreement are defined or cross-referenced in Article 10.

A.      The Seller and Adinath Corp. each commenced voluntary bankruptcy cases (each a "Bankruptcy Case," and together the "Bankruptcy Cases") under title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida, Miami Division (the "Bankruptcy Court") on April 16, 2015 (the "Petition Date"). The Bankruptcy Cases are being jointly administered under Case No. 15-16885-LMI.

B.      Buyer desires to purchase the Acquired Assets and assume the Assumed Liabilities from Seller, and Seller desires to sell, convey, assign, and transfer to Buyer the Acquired Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with §§105 and 363 and other applicable provisions of the Bankruptcy Code.

C.      On _____ ___, 2015, the Bankruptcy Court entered an order (the "Sale Procedures Order"), *inter alia*, approving bidding procedures for the sale of Seller's intellectual property.

D.      The Acquired Assets and Assumed Liabilities are assets and liabilities of Seller, which are to be purchased by the Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to §§ 105, 363, and 365 of the Bankruptcy Code (the "Sale Order"), all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order and in accordance with other applicable provisions of the Bankruptcy Code.

E.      The execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth herein are subject to, among other things, the entry of the Sale Order.

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants, and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, intending to be legally bound, Seller and Buyer hereby agree as follows:

## ARTICLE 1
## PURCHASE AND SALE OF THE ACQUIRED ASSETS

Section 1.1.    Transfer of Acquired Assets. At the Closing, and upon the terms and conditions herein set forth, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of Seller's right, title and interest in, to and under the following property wherever located and whether or not reflected on the Seller's books and records free and clear of all liens, claims and encumbrances (the "Acquired Assets").

17

(a)     all right, title and interest in and to the trademarks, service marks, trade names, service names, brand names, trade dress rights, logos, corporate names, and general intangibles of a like nature, including the names Simply Fashion Stores and any derivatives thereof and any common law rights, owned by Seller including those listed on <u>Schedule 1.1(a)</u> (the "<u>Trademarks</u>") together with the goodwill of any business symbolized thereby and all applications, registrations, and renewals related thereto (subject to Seller's right to the continued use thereof through the Sale Termination Date) and the right to bring any action at law or in equity for the infringement of the Trademarks occurring prior to the Sale Termination Date, including the right to receive any proceeds and damages therefrom;

(b)     all right, title, and interest in the domain names (subject to the proviso below in this subsection (b), Web sites and URLs owned or used by Seller including those listed on Schedule 1.1(b);

(c)     all rights, title and interest in the data relating to customers of the Seller that relate to the Trademarks that are part of the Acquired Assets, including customer phone numbers, email addresses and customer list(s) (e.g., including names and mailing addresses);

(d)     all right, title and interest in and to the copyrights owned by Seller including those listed on <u>Schedule 1.1.(d)</u> and all other copyrights owned by Seller, including designs, patterns, specifications, styles, style and pattern books, websites, Facebook pages, Twitter pages, and Instagram and other social media pages as more fully described on Schedule 1.1(d) (the "<u>Copyrights</u>") and the right to bring any action at law or in equity for the infringement of such Copyrights occurring prior to the Closing Date, including the right to receive all proceeds and damages therefrom;

(e)     to the extent not included in Section 1.1 (a-f) above, and to the extent transferable without cost and expense to Seller, all software, telephone numbers, facsimile numbers, email addresses, directory listings, customer and supplier lists, written works, visual works, audio works, multimedia works, web site, idea, concept, patent, method, process, discovery or other intangible asset or Intellectual Property Right of any nature, if any, whether in use, operational, active, under development or design, non-operative or inactive, owned, marketed, maintained, supported, used, licensed or otherwise held for use by, or licensed to or with respect to which rights are granted to, a Person, whether arising under statutory or common law in any jurisdiction or otherwise, and includes the goodwill of Seller's business symbolized by and associated with the foregoing, all applications, registrations, and renewals related thereto and the right to bring any action at law or in equity for the infringement of such Intellectual Property Rights occurring prior to the Closing, including the right to receive all proceeds and damages therefrom.

Section 1.2.    <u>Excluded Assets</u>. The Acquired Assets do not include any assets of Seller not expressly identified in Section 1.1 above as Acquired Assets (all such assets not being acquired by Buyer being herein referred to as the "<u>Excluded Assets</u>").

Section 1.3.    <u>Assumption of Liabilities</u>. At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform, and discharge when due, only the following liabilities of Seller (the "<u>Assumed Liabilities</u>"):

18

        (a)      all liabilities of Seller for Transaction Taxes, if any, payable in connection with the transactions contemplated by this Agreement, subject to Section 6.1 of this Agreement;

        (b)      the liabilities and obligations arising on or after the Closing Date, relating solely to or arising out of Buyer's ownership and operation of the Acquired Assets; provided, however, that (i) the Assumed Liabilities shall not include liabilities and obligations arising out of the Seller's ownership of the Acquired Assets prior to the Closing Date and (ii) this Section shall not limit the obligations of Seller pursuant to Section 4.1 hereof (and shall be subject thereto).

Section 1.4.   Retention of Liabilities. Buyer is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of whatever nature, whether presently in existence or arising hereafter. All such other liabilities and obligations shall be retained by and remain liabilities and obligations of Seller (all such liabilities and obligations not being assumed being herein referred to as the "Excluded Liabilities").

## ARTICLE 2

## CONSIDERATION

Section 2.1.   Consideration.  The aggregate consideration for the sale and transfer of the Acquired Assets shall be _____ ($_____) (the "Purchase Price"), which price shall be payable and deliverable in accordance with Section 3.3 and the assumption by Buyer of the Assumed Liabilities.

Section 2.2.   Deposit. Concurrently with the execution and delivery of this Agreement, Buyer shall pay to Seller an amount equal to ten percent (10%) of the Purchase Price as a deposit (the "Deposit"). If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with Section 9.2. If the Closing occurs, the Deposit shall be applied (without interest) towards the Purchase Price.

Section 2.3.   363 Sale. Seller has sought approval and entry of the Sale Order pursuant to the motion filed by Seller for entry of the Bid Procedures Order and the Sale Order under Sections 105, 332, and 363 of the Bankruptcy Code. The Sale Order shall be in a form reasonably acceptable to Buyer and Seller. Prior to consideration by the Bankruptcy Court of entry of the Sale Order, Buyer's agreement to purchase the Acquired Assets on the terms set forth herein will be subjected to competitive bids in an auction to be conducted in accordance with the Bid Procedures Order (the "Auction").

## ARTICLE 3
## CLOSING AND DELIVERIES

Section 3.1.   Closing. Absent an agreement by the Debtor to the contrary, the consummation of the transactions contemplated hereby (the "Closing") shall take place the later of (i) such date that is within two (2) business days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under Fed. R. Bankr. P. 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and (ii) the first business day following the termination of the Hilco Merchant

19

Resources, LLC/Gordon Brothers Retail Partners, LLC-Simply Fashion Stores, Ltd. Agency Agreement, but in any event no later than August 31, 2015 (the "Sale Termination Date").

Section 3.2.    Seller's Deliveries. At the Closing, the sale, transfer, assignment and delivery by Seller of the Acquired Assets to Buyer, as herein provided, shall be effected on the Sale Termination Date by quit claim deed, bills of sale, endorsements, assignments and other instruments of transfer and conveyance (including assignments appropriate for recording in the USPTO, as applicable), as well as the electronic transfer of all files and records of Seller relating to the Acquired Assets excluding any representations, warranties or covenants (other than those expressly set forth herein) and shall otherwise be consistent with the terms of this Agreement reasonably satisfactory in form and substance to counsel for Buyer and Seller

Section 3.3.    Buyer's Deliveries. At the Closing:

(a)    At Closing, Buyer shall pay to Seller, by wire transfer of immediately available funds in accordance with instructions provided by the Seller, an amount equal to the Purchase Price; and

(b)    Buyer shall execute and deliver to Seller an instrument of assumption of liabilities with respect to the Assumed Liabilities reasonably satisfactory in form and substance to counsel for Seller and Buyer.

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES

Section 4.1.    Representations and Warranties of Seller.  Seller represents and warrants to Buyer as follows:

(a)    Corporate Organization. Seller is a limited partnership duly organized and validly existing under the laws of the State of Alabama. Subject to any necessary authority from the Bankruptcy Court, Seller has all requisite corporate power and authority to own its properties and assets and to consummate the transactions contemplated hereby.

(b)    Authorization and Validity: No Conflict.  Seller has all requisite corporate power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder. Seller's execution and delivery of this Agreement and its performance of its obligations hereunder have been duly authorized by all necessary corporate action of Seller, and no other action on the part of Seller is necessary to authorize such execution, delivery, and performance. This Agreement has been duly executed by Seller and, subject to the Bankruptcy Court's entry of the Sale Order, Seller's obligations hereunder are valid, binding, and enforceable. The execution, delivery, and performance by Seller of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Seller and does not and will not violate any provision of law, or any order applicable to Seller, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract, agreement, policy (including privacy policy) or other obligation to which Seller is a party or by which it is bound or to which any of its properties or assets is subject. The execution,

20

delivery, and performance of this Agreement by Seller does not and will not require the consent or approval of, or filing with, any government or any other Person.

(c)    <u>Title and Ownership: Condition of Trademarks</u>.

(i)    Except as set forth on <u>Schedule 4.1(c)</u>. Seller has good title and is the sole and exclusive owner of any and all right, title, and interest in and to the Acquired Assets, including the Trademarks. As of the date hereof, no proceeding is pending (including, without limitation, one initiated by the FTC) or threatened in a writing received by Seller, nor has any claim or demand been made, which challenges or challenged the legality, validity, enforceability, use or exclusive ownership by Seller of any or all of the Acquired Assets, including any Trademark. Subject to the entry of the Sale Order, at the Closing, Seller will have the right to transfer the Acquired Assets to Buyer free and clear of all Liens, restrictions on use or disclosure obligations and will not execute any agreement in conflict therewith. The customer list(s) shall be transferred to Buyer by electronic means and shall contain for each customer, if applicable, the email addresses, phone numbers, names, and mailing addresses, <u>provided</u>, <u>however,</u> Seller makes no representations or warranties with respect to the validity of any email addresses, phone numbers, names or mailing addresses contained in the Acquired Assets.

(ii)    To Seller's knowledge, none of the Acquired Assets or their respective past or current uses has violated or infringed upon, or is violating or infringing upon, any intangible or Intellectual Property Right of any Person, nor to the Seller's knowledge has any Acquired Asset been violated or infringed upon, or is violating or infringing upon, by any intangible or other Intellectual Property Rights of any Person. Each Trademark within the Acquired Assets is subsisting and in full force and effect and Seller has taken all steps necessary to maintain such Trademarks, including, as applicable, the payment when due of all maintenance and renewal fees and annuities and the filing of all necessary renewals, statements and certifications.

(iii)    The Seller is the registrant of all internet domain names included within the Acquired Assets, and all registrations of such domain names are in good standing until such dates as set forth on Schedule 4.1(c).

(d)    <u>Contracts</u>. As of the Sale Termination Date, except as disclosed on Schedule 4.1(c). there are no license agreements or other contracts of whatsoever nature with respect to any of the Acquired Assets.

(e)    <u>Software</u>. Except as set forth on <u>Schedule 4.1(e)</u> hereto, the Acquired Assets do not include any computer program, operating system, application, firmware or software of any nature other than off-the- shelf software. The Acquired Assets do not include any software licenses or other intangible property. There are no existing and continuing material breaches of the Seller's security procedures and there have been no material attempted or successful unauthorized incidents of access, use, disclosure, modification or destruction of information, data or software or interference with systems operations in all or any portion of the Seller computer systems, including any such breach or incident that requires notice to any Person.

21

Section 4.2.    <u>Representations and Warranties of Buyer</u>. Buyer hereby represents and warrants to Seller as follows:

(a)    <u>Corporate Organization</u>. Buyer is an _____, duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation, and has all requisite power and authority to own its properties and assets.

(b)    <u>Authorization and Validity of Agreement</u>. Buyer has all requisite power and authority to enter into this Agreement and to carry out its obligations hereunder. Buyer's execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action by the board of directors (or equivalent) of Buyer, and no other action on the part of Buyer is necessary to authorize such execution, delivery, and performance. This Agreement has been duly executed by Buyer and Buyer's obligations hereunder are valid, binding, and enforceable.

(c)    <u>No Conflict or Violation</u>. The execution, delivery, and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)    <u>Consents and Approvals</u>. The execution, delivery, and performance of this Agreement does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals, and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e)    <u>Investigation by Buyer</u>. Buyer has conducted its own independent review and analysis of the Acquired Assets and the Assumed Liabilities. Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with Seller's Bankruptcy Case. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in <u>Section 4.1</u> (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, its Affiliates, or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws, or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in

22

Section 4.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3.    Warranties Exclusive. The parties acknowledge that the representations and warranties contained in this Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing, Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING THE BUYER ACKNOWLEDGES THAT SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (IV) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL TRADE COMMISSION LAWS OR OTHER LAWS.

Section 4.4.    Survival of Representations and Warranties. Notwithstanding anything to the contrary herein, none of the representations or warranties of Seller set forth in this Agreement or in any certificate or other document delivered pursuant hereto shall survive the Closing.

**ARTICLE 5**
**COVENANTS AND OTHER AGREEMENTS**

Section 5.1.    Covenants of Seller.  Seller covenants as follows:

(a)    Further Assurances.  At the request and the sole expense of Buyer, at any time after the Closing Date, Seller shall promptly execute and deliver such documents, and take other acts at no additional expense to Seller, as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement, including but not limited to procuring, maintaining, perfecting, registering, transferring, evidencing and enforcing the full benefits, enjoyment, rights, title and interest, on a worldwide basis of the Acquired Assets.

(b)    Seller shall legally change the name of the Seller within 15 Business Days of Closing and thereafter shall use such changed names in the caption or other pleadings in its Bankruptcy Case; provided, however, that Seller may use its current names for the purposes of conducting, administrating and/or closing the Seller's Bankruptcy Case to the extent necessary to refer to the former names, except that Seller shall not use the former names in the caption of pleadings in the Seller's Bankruptcy Case unless required by the Bankruptcy Code or the Bankruptcy Court.

Section 5.2.    Covenants of Buyer.

(a)     Consents & Approvals. Buyer shall use all commercially reasonable efforts to obtain all consents and approvals of all governments, and all other Persons, required to be obtained by Buyer to effect the transactions contemplated by this Agreement.

(b)     Further Assurances. Buyer shall take, or cause to be taken, all action, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective in an expeditious manner the transactions contemplated hereby.

Section 5.3.    Bankruptcy Matters. Seller and Buyer shall use commercially reasonable efforts to cooperate, assist, and consult with each other to secure the entry of the Sale Order (in form and substance satisfactory to Buyer and Seller) following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement.

## ARTICLE 6
## TAXES

Section 6.1.    Taxes Related to Purchase of Assets. All federal, state, and local sales, transfer, gains, excise, value-added, or other similar Taxes other than income Taxes of Seller, including, without limitation, all state and local Taxes other than income Taxes of Seller in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, the "Transaction Taxes"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and are not exempt under § 1146(a) of the Bankruptcy Code, shall be paid by Buyer. Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement. Seller at Buyer's expense, agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 6.2.    Cooperation on Tax Matters.

(a)     Buyer and Seller agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other required or optional filings relating to Tax matters, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer to any governmental or regulatory inquiry relating to Tax matters.

(b)     Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and Tax records and information (i) relating to the Acquired Assets or the Assumed Liabilities that are in existence on the Sale Termination Date and transferred and delivered to Buyer hereunder and (ii) coming into existence after the Sale Termination Date that relate to the Acquired Assets or the Assumed Liabilities before the Closing Date, for a period of at least three years from the Sale Termination Date, and will give Seller notice and an opportunity to retain any such records in the event that Buyer determines to destroy or dispose of

24

them after such period. In addition, from and after the Sale Termination Date, Buyer agrees that it will provide access to Seller and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets or the Assumed Liabilities as Seller may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete any cases under chapter 11 of the Bankruptcy Code of Seller. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets or the Assumed Liabilities.

Section 6.3.    Allocation of Purchase Price and Purchase Price Allocation Forms. Buyer and Seller agree to allocate the Purchase Price and the Assumed Liabilities among the Acquired Assets as reasonably determined by the parties (the "Allocation"'). Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective Forms 8594 as provided for in Section 1060 of the Code on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed as a result of the transactions contemplated hereby. The Seller and Buyer agree to promptly provide each other with any information necessary to complete such Tax Returns and IRS Forms 8594 (and any corresponding form required to be filed by a state or local taxing authority). The Seller and Buyer shall not take any position on a Tax Return, tax proceeding or audit that is inconsistent with the Allocation except to the extent required otherwise by applicable Law; provided, however, that (i) Buyer's cost for the Acquired Assets may differ from the total amount allocated hereunder to reflect the inclusion in the total cost of items (for example, capitalized acquisition costs) not included in the total amount so allocated and (ii) the amount realized by the Seller may differ from the total amount allocated hereunder to reflect transaction costs that reduce the amount realized for federal income Tax purposes.

Section 6.4.    Tax Payments. Except for Transaction Taxes provided for in Section 6.1, Seller shall be liable for (a) any Tax payable by the Seller with respect to the operation of the business associated with the Acquired Assets on or before the Sale Termination Date; (b) any Tax payable by the Seller with respect to the ownership, possession, purchase, lease, sale, disposition or use of any of the Acquired Assets at any time on or before the Closing Date; and (c) any Tax resulting from the sale of the Acquired Assets to Buyer or otherwise resulting from the transactions contemplated by this Agreement.

## ARTICLE 7
## CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 7.1.    Conditions Precedent to Performance by Seller.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Sale Termination Date, of the following conditions, any one or more of which (other than the condition contained in Section 7.1(c)) may be waived by Seller in its sole discretion:

(a)      Representations and Warranties of Buyer. All representations and warranties made by Buyer in Section 4.2 shall be accurate in all material respects on and as of the Sale Termination Date as if again made by Buyer on and as of such date, except for

inaccuracies that do not result in a Material Adverse Effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated on the Sale Termination Date and signed by the president, or equivalent, of Buyer, to that effect.

(b)    <u>Performance of the Obligations of Buyer</u>. Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Sale Termination Date (except with respect to the obligation to pay the Purchase Price in accordance with the terms of this Agreement, which obligation shall be performed in all respects as required under this Agreement), and Seller shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Buyer, to that effect.

(c)    <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order, in form and substance reasonably satisfactory to Buyer and Seller, and no order staying, reversing, modifying, or amending the Sale Order shall be in effect on the Sale Termination Date.

(d)    <u>No Violation of Orders</u>. No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 7.2.    <u>Conditions Precedent to the Performance by Buyer</u>. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Sale Termination Date, of the following conditions, any one or more of which (other than the condition contained in <u>Section 7.2(a)</u>) may be waived by Buyer in its sole discretion:

(a)    <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order and such Sale Order shall be a final order on the Closing Date and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Sale Termination Date).

(b)    <u>No Violation of Orders</u>. No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

(c)    <u>Representations and Warranties of Seller</u>. All representations and warranties made by Seller in <u>Section 4.1</u> shall be accurate in all material respects on and as of the Sale Termination Date as if again made by Seller on and as of such date, except that all representations qualified by materiality shall be true and correct on and as of the Sale Termination Date as if again made by Seller on and as of such date, and Buyer shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Seller, to that effect.

(d)    <u>Performance of the Obligations of Seller</u>. Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Sale Termination Date, and Buyer shall have received a certificate dated on the Sale Termination Date and signed by the president, or equivalent, of Seller, to that effect.

## ARTICLE 8
## TERMINATION

Section 8.1.    Termination. This Agreement may be terminated at any time prior to the Sale Termination Date:

(a)    by either Seller or Buyer if the Closing shall not have occurred by August 31, 2015; provided, however, that the Sale Termination Date may be extended by Seller and Buyer upon mutual agreement;

(b)    by either Seller or Buyer upon the entry of an order of the Bankruptcy Court authorizing the sale of the Acquired Assets to a party other than Buyer ("Competing Transaction"); provided, however, that Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Acquired Assets, in which case Buyer is required to remain bound by the terms of this Agreement until the earlier of (i) closing of the Competing Transaction or (ii) August 31, 2015;

(c)    by Seller if Buyer shall have breached any of its representations, warranties, covenants, or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after Seller gives written notice to Buyer specifying such breach;

(d)    by Buyer if Seller shall have breached any of its representations, warranties, covenants, or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within ten (10) Business Days after Buyer gives written notice to Seller specifying such breach; or

(e)    By the mutual written consent of Seller and Buyer.

(f)    Effect of Termination. In the event of termination of this Agreement as provided in this Section 8.1 above, this Agreement shall forthwith become void and there shall be no liability on the part of either party; provided, however, that in the event this Agreement is terminated pursuant to Section 8.1(a) or (c) and Seller is not then in breach of Seller's obligations hereunder, then Seller shall be entitled to retain the Deposit and all interest thereon as liquidated damages and as its sole and exclusive remedy. In the event of termination of this Agreement for any reason other than pursuant to Section 8.1(c), and provided that Buyer is not then in breach of Buyer's obligations hereunder, Buyer shall be entitled to return of the Deposit, without any interest thereon. The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a termination of this Agreement pre-Closing due to a breach of Sellers' obligation hereunder.

## ARTICLE 9
## MISCELLANEOUS

Section 9.1.    Successors and Assigns. Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect; provided, however, that Buyer may

assign this Agreement to an affiliated entity without the consent of Seller provided that Buyer shall remain liable as guarantor of such assignee's obligations hereunder. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

Section 9.2.    Governing Law; Jurisdiction. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Florida (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code. For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court. After Seller is no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of any state or federal court located in Miami-Dade County, Florida.

Section 9.3.    Expenses. Except as otherwise provided herein, each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated. Buyer shall pay any fees, costs, and expenses associated with recording an assignment of any of the Acquired Assets.

Section 9.4.    Broker's and Finder's Fees. Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement other than Hilco IP Services, LLC d/b/a Hilco Streambank, whose fees and expenses shall, as between the parties hereto, be the responsibility of Seller and which shall be paid from the proceeds of the Purchase Price, and, insofar as such party knows, no other broker or other Person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 9.5.    Severability. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void, or unenforceable, such provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 9.6.    Notices.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given (i) on the date of service, if served personally on or sent via electronic mail to the party to whom notice is to be given; (ii) on the day after delivery to Federal Express or similar overnight courier or the Express

28

Mail service maintained by the United States Postal Service; or (iii) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

> Simply Fashion Stores, Ltd.
> <u>Attn</u>: Soneet R. Kapila
> 1000 South Federal Highway, Suite 200
> Ft. Lauderdale, FL 33316
> Email: skapila@kapilamukamal.com

With a copy to:

> Swapnil Shah
> 2110 NW 95th Ave
> Miami, FL 33172

Additional copy to:

> Hilco IP Services, LLC d/b/a Hilco Streambank
> <u>Attn</u>: Jack Hazan
> 1500 Broadway, Suite 810
> New York, New York 10036
> Email: jhazan@hilcoglobal.com

Additional copy to:

> Berger Singerman LLP
> <u>Attn</u>: Paul Steven Singerman and Christopher A. Jarvinen
> 1450 Brickell Ave., Suite 1900
> Miami, FL 33131
> Email: singerman@bergersingerman.com
> cjarvinen@bergersingerman.com

If to Buyer:

With a copy to:

Additional copy to:

(b)    Any party may change its address for the purpose of this <u>Section 9.6</u> by giving the other party written notice of its new address in the manner set forth above. Notices hereunder may be given by a party's attorneys.

29

Section 9.7.    <u>Amendments: Waivers</u>. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties, or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation, or warranty of this Agreement.

Section 9.8.    <u>Entire Agreement</u>. This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.9.    <u>Parties in Interest</u>. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer. This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 9.10.    <u>Headings. Interpretation. Gender</u>. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The table of contents and the captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement. All references to "herein" or "hereof or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 9.11.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

# ARTICLE 10
## DEFINITIONS

Section 10.1.  Certain Terms Defined. As used in this Agreement, the following terms have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"Code" means the Internal Revenue Code of 1986, as amended.

"Intellectual Property Rights" means any and all intellectual property rights of whatever nature and in whatever form including all inventions, patents, trademarks, service marks, registered designs, domain names (but not including the domain name SimplyFashion.com), pending applications for any of the foregoing, trade and business names, brand names, unregistered trademarks and service marks, unregistered designs and rights in designs, trade dress, trade secret, formula, copyrights, database rights and rights in software, moral rights, performers rights, know-how, customer, supplier and/or mailing lists and all other intellectual property and proprietary rights including all permits, and all other similar or equivalent industrial, intellectual or commercial rights or property subsisting under the laws of each and every jurisdiction throughout the world whether registered or not, and whether vested, contingent or future, and all divisions, continuations, continuations-in-part, substitutes, reversions, renewals and extensions of any of the foregoing, and all rights under permits, laws or otherwise in relation to any of the foregoing, as well as the rights to sue for past, present, and future infringement of any and all such intellectual property rights.

"IRS" means the Internal Revenue Service.

"Lien" means any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement, other than (a) a lessor's interest in, and any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement on or affecting a lessor's interest in, property underlying any leases; (b) any imperfection of title with respect to any asset that does not materially interfere with the present occupancy of such asset and the continuation of the present occupancy of such asset; and (c) such covenants, conditions, restrictions, easements, encroachments or encumbrances that are not created pursuant to mortgages or other financing or security documents, or any other state of facts, that do not materially interfere with the present occupancy of an asset.

"Material Adverse Effect" means a state of facts, event, change or effect on the value of the Acquired Assets that results in a material adverse effect on the value of the Acquired Assets taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) any action of the Seller pursuant to any order of the Bankruptcy Court entered prior to the date hereof, including, without limitation, orders entered in connection with the sale of the Seller's other assets or the liquidation of Seller's inventory, the

31

implementation of this Agreement, the transactions contemplated by this Agreement, any ancillary agreements or the announcement thereof; (B) changes or conditions affecting the retail industry generally; (C) changes in economic, regulatory or political conditions generally; (D) changes resulting from, or from any motion, application, pleading or order filed related to, the Seller's Bankruptcy Case; or (E) any act(s) of war or of terrorism.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Subsidiary(ies)" means, when used with respect to any specified Person, any other Person (i) of which the specified Person or any Subsidiary thereof is a general partner, (ii) of which the specified Person or a Subsidiary thereof own at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions for such other Person of which owns the specified person or a Subsidiary thereof, or (iii) that is directly or indirectly controlled by the specified Person or any Subsidiary thereof.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

"Taxes" means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any government, which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, worker's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Code) and other obligations of the same or a similar nature, whether arising before, on or after the Closing Date; and "Tax" shall mean any one of them.

[*signature page follows*]

32

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

**BUYER**


By: _____
Name:
Title:


**SELLER**

**SIMPLY FASHION STORES, LTD.**


By: _____
Name:  Soneet R. Kapila
Title:   Chief Restructuring Officer

EXHIBIT A

DEBTOR'S WIRE INSTRUCTIONS

6553836-1